555 A.2d 1337

**Elaine NIKA, Appellee,**

**v.**

**Pandeli NIKA, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 15, 1988.

Filed March 22, 1989.

Neil E. Jokelson, Philadelphia, for appellant.
Gerald Schorr, Philadelphia, for appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

DEL SOLE, Judge:

This is an appeal from an order entered in the Court of Common Pleas of Montgomery County in a divorce action.

On June 20, 1984, appellee Elaine Nika filed a complaint requesting, *inter alia*, a divorce from appellant Pandeli Nika, equitable distribution of their property, alimony, alimony pendente lite, and child support. Following protracted litigation, which involved among other proceedings a number of contempt hearings concerning Mr. Nika's noncompliance with court orders, the Honorable Samuel Salus entered a comprehensive order in equitable distribution on April 10, 1987. This order provided, in part, that Elaine Nika was to receive the following: sixty-five percent of the net proceeds remaining from the sale of the parties' residence after specified deductions were made for liabilities accumulated by the parties; permanent alimony in the amount of one hundred and twenty-five dollars per week; the parties' Lincoln Continental Town Car; and certain personal property, including china, crystal, and a fur coat. In addition, the order provided for Pandeli Nika to receive all the personal property currently in his possession, the fifteen hundred dollars remaining in the Fidelity account, his personal papers and Omega watch in Mrs. Nika's possession, the parties' Toyota Cressida, as well as thirty-five percent of the net proceeds from the sale of the parties' residence after the deductions noted above had been made.

Mr. Nika subsequently filed a motion for post-trial relief and exceptions to the equitable distribution order. Mrs. Nika responded to this motion and the exceptions by noting that Pa.R.C.P. 1920.55 precludes the filing of post-trial motions to a final decree in divorce actions. Argument was then heard on Mr. Nika's motion. On June 18, 1987, Judge Salus filed a final order and decree granting the parties' divorce and dismissing Mr. Nika's exceptions as being without merit and premature because no divorce decree had yet been entered. In this June 18 order, Judge Salus also

stated that his April 10, 1987, order in equitable distribution was reconfirmed in its entirety with the exception of certain paragraphs contained in the conclusions-of-law section for which he included amendments. Regarding the thirty-five percent of the proceeds from the sale of the parties' marital residence which the court had originally concluded Mr. Nika should receive, the court made the following amendment:

Paragraph 13. From the net proceeds left after deducting all of the foregoing from the joint account containing house proceeds and others, Elaine Nika is to receive 65% and Pandeli credited with 35%, to be held by his attorney to pay off the massive arrearages in support, medical and orthodenture bills, alimony, fees and fines and costs incurred during the pendency of this action, his attorneys' fees and all debts up to this point.... The 35% held by counsel in escrow and not turned over to a receiver is never to be disbursed directly to defendant because of his continued contempt of this Court and his failure to pay any arrearages or current obligations in accordance with Court order even though promising personally to do so. This Court strongly recognizes that defendant is an unreformed gambler who would squander away any proceeds from the house and it is using this fund as security and a source for the payment of defendant's obligations hereunder for the reason aforestated and others. Further, the Court 'reocgnizes [sic] that defendant has purposely made himself appear to be impecunious and caused his businesses to fail in order to defeat the divorce and equitable distribution and to discourage any claim from plaintiff, their children or counsel, and the Court is fully aware that defendant has marketable skills in the restaurant business that his earning capacity well dictates what is ordered for alimony, bills, support, counsel fees and expense obligations plus arrearages and the capacity and ability to pay is so found despite the surface appearance of inability to do so promoted by defendant.

Thereafter, the parties and their attorneys apparently met in conference with Judge Salus to clarify certain aspects of the distribution order. This conference, however, was not recorded.[1] After the hearing, on November 24, 1987, Judge Salus filed the order from which Mr. Nika appeals. The provisions of this order to which Mr. Nika objects are the following:

2. All future payments of alimony and any other obligations ordered to be paid by defendant, if an enforcement petition is needed to collect same, from this day forward shall require the defendant to pay the attorney's fees and costs. This specifically is ordered to insure that the defendant shall comply with the Court's alimony orders and others in light of his prior intransigence as to these obligations over a four year period prior to this final resolution and as a warning and notice to him that complete disregard of the Court's order will not be tolerated.

. . . . .

5. Any monies due to defendant after payment of the aforesaid obligations set forth in previous Orders of the Court, which might have been paid to him as a balance after distribution shall be paid to the Domestic Relations Office to create a credit in his former wife's alimony to insure its payment insofar as that balance is able.

Mr. Nika raises the following issues concerning these provisions for our review: (1) whether the trial court abused its discretion in ordering that he would be required to pay the attorney's fees and costs for any enforcement petition needed to collect future payments of alimony or other monetary obligation which he was ordered to pay; and (2) whether the trial court abused its discretion in ordering that monies equitably distributed to him be held by the domestic relation's office as a credit against future alimony payments due his wife.

1. Because this conference was unrecorded, we are unable to accept Mrs. Nika's claim that Mr. Nika consented to the provisions to which he objects in this appeal.

■ Mr. Nika first argues that the trial court had no authority to enter an order allowing the collection of attorney's fees regardless of circumstances should an arrearage enforcement petition be filed in the future. We agree.

■ While a trial court has the authority to direct a person held in civil contempt for non-payment of alimony to pay the court costs and the attorney's fees accumulated by his or her spouse in relation to the contempt action, *Commonwealth v. Novack*, 310 Pa.Super. 112, 456 A.2d 208 (1983), a trial court does not have the authority to order that such costs will be paid by a person if an action is brought in the *future* for non-payment of alimony. A person cannot be held in contempt for non-payment of support unless a hearing is held to determine whether he or she has willfully failed to comply with a court order. *Crislip v. Harshman*, 243 Pa.Super. 349, 365 A.2d 1260 (1976). In other words, if for some reason a person falls into a desperate situation and cannot pay the amount of support a court order requires, that person cannot be held in contempt for failing to make the payments. Although it is clear from the record that Mr. Nika has willfully failed to comply with many monetary obligations that the court has bestowed on him throughout the time leading up to his divorce and that he has tried to hide his financial situation from the court, we cannot assume that every future instance of nonpayment will be willful. Rather, if Mr. Nika fails to pay the alimony which the trial court ordered that he pay, a hearing must be held to determine whether his non-payment was willful. Only at that point can the trial court enter an order requiring him to pay his wife's attorney's fees and the court costs. We, therefore, must vacate paragraph two of the trial court's order pertaining to recovery of attorney's fees and costs.

■ Mr. Nika also objects to that portion of the trial court's order directing that any money due him as a result of the court's equitable distribution order be paid to the domestic relations office to create a credit in Mrs. Nika's alimony to insure its payment.

He argues that § 503 of the Divorce Code controls. Section 503 states:

If at any time a party is in arrears in alimony or alimony pendite lite as provided for in sections 501 and 502 after hearing, the court may, in order to effect payment of the arrearages:

(5) Require security to insure future payments.

23 Pa.C.S.A. § 503(5) (Supp.1988). The conditions which must be met, then, before a court may take such actions are that a party be in arrears in the payment of alimony or alimony pendite lite and that the court hold a hearing. The effect of resolving this issue by applying § 503 is that a defendant could become current in support obligations in order to secure the entitled share of the equitably distributed monies then, having dissipated those funds, fall back into arrears. This result can be avoided if the order in question, in so far as it pertains to the creation of a security fund, is permitted to stand as an exercise of the full equity power granted by § 401(c) of the Divorce Code.

Section 503 is entitled "Enforcement of arrearages." The order here is not an order issued to enforce arrearages; it is an equitable distribution order. As such, it is not subject to the conditions precedent inherent in § 503. Rather, it is an embodiment of the policy expressed in § 401(c) of the Divorce Code. That section states:

In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions *or other orders* which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and may grant such other relief or remedy as equity or justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause. (emphasis added).

One of the express purposes of the Divorce Code is to mitigate the harm to spouses which may be caused by the legal dissolution of the marriage. *See* § 102(a)(4). Among the findings of fact in the case at hand, is that the Wife/Ap-

pellee has a history of mental problems which have required several hospitalizations; her condition has been diagnosed as a permanent one affecting her economic viability and job opportunities. Given this set of circumstances and her ex-husband's woefully inadequate record of meeting his support obligations, the order entered here is one which is entirely justified and fully sanctioned by the controlling statute. As our supreme court has stated under similar circumstances, "Once there has been a demonstrated lack of intention of making future payments, we see no reason to force an individual who needs support to obtain a new judgment and commence enforcement proceedings for each missed payment." *Young v. Young,* 507 Pa. 40, 488 A.2d 264, 268 fn. 11 (1985). In *Young,* the issue involved attachment of a pension in order to satisfy an obligation created by an equitable distribution order. The rationale employed in *Young* was later followed by this court in *Baier v. Baier,* 343 Pa.Super. 287, 494 A.2d 470 (1985). In *Baier,* the issue involved the use of a pension fund to secure an obligation to pay alimony. This court and the state's highest court, then, have permitted the attachment of a pension fund in order to protect the public from having to assume the responsibility of supporting family members when individuals refuse to comply with court orders to provide support. *Young,* 488 A.2d at 269. The facts presented in the instant case require application of that same rationale.

Accordingly, we vacate in part and affirm in part. Jurisdiction relinquished.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, Judge, concurring:

I am satisfied that the record demonstrates a long history of nonpayment and, therefore, agree that the trial court, in the case at bar, did not abuse its discretion in directing that any monies due appellant as a result of the equitable distribution order be paid to the domestic relations office to create a credit in appellee's alimony to insure its payment. I, however, believe that the better practice is to have the

trial court conduct a hearing before it directs that equitable distribution proceeds be used as security for future payments.