849 A.2d 582

**Helen DUDAS, Appellee**

v.

**Theodore PIETRZYKOWSKI, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 2, 2003.

Decided May 21, 2004.

Arthur L. Gutkin, for Theodore Pietrzykowski.

Edward Paul Sheetz, Allentown, for Helen Dudas.

Before CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, LAMB, JJ.

## OPINION

Justice NEWMAN.

We granted allocatur in this matter to determine whether the Court of Common Pleas of Lehigh County (trial court) abused its discretion in ordering that the entire amount paid to Appellant Theodore Pietrzykowski (Husband) as a compromise and release of a workers' compensation award be placed in an annuity escrow account to satisfy his alimony obligation to Appellee Helen Dudas (Wife). Because the Superior Court improperly affirmed the decision of the trial court, we reverse the Order of the Superior Court and remand to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Husband was born on April 22, 1938, and Wife was born on December 12, 1937. They were married on October 15, 1960, and separated on June 29, 1992. The parties are the parents of five children, all of whom were adults at the time of separation. Wife is legally blind. On February 27, 1991, Husband sustained a work-related injury, for which he became eligible to receive workers' compensation benefits.[1] On August 12, 1992, Wife filed a Support Complaint with the trial court, and it ordered Husband to pay Wife $100.00 per week as alimony pendente lite. The amount was subsequently raised to $150.00 per week.

On January 5, 1995, the parties entered into an agreement settling all matrimonial issues, including the payment of $500.00 per month from Husband to Wife as alimony. Howev-

---

1. The record does not specify the date on which Husband actually began receiving workers' compensation benefits.

er, the parties agreed that if Husband began receiving social security benefits in the future, alimony would be reduced to fifty per cent of the benefits, but would never be more than $500.00 per month. They further agreed that alimony would cease upon Wife's cohabitation, remarriage or death. On September 25, 1996, the parties entered into a stipulation whereby they agreed that Husband would continue to pay Wife $500.00 per month as alimony without any reduction if, in the future, he was to receive social security benefits. They again agreed that alimony would cease upon Wife's cohabitation, remarriage or death.[2] The trial court made the stipulation an Order of Court, and on October 28, 1996, the parties were divorced.

At the time of the divorce, Husband was receiving workers' compensation benefits. Husband arranged for the workers' compensation insurance carrier to send Wife a monthly check for $500 .00 through the Lehigh County Domestic Relations Section, and later through the Pennsylvania State Collection and Disbursement Unit (PASCDU). Husband and the insurance carrier of his employer subsequently reached an agreement for compromise and release of his claim for workers' compensation benefits. On July 20, 1999, following a hearing, a workers' compensation judge entered an Order approving the compromise and release.[3] As Husband and Wife could not

2. Since the agreement did not specifically provide for alimony to continue after Husband's death, the obligation will cease when he dies pursuant to Section 3707 of the Divorce Code, 23 Pa.C.S. § 3707.

3. Section 449 of the Workers Compensation Act, 77 P.S. § 1000.5, provides in relevant part:
   Compromise and release
   (a) Nothing in this act shall impair the right of the parties interested to compromise and release, subject to the provisions herein contained, any and all liability which is claimed to exist under this act on account of injury or death.
   (b) Upon or after filing a petition, the employer or insurer may submit the proposed compromise and release by stipulation signed by both parties to the workers' compensation judge for approval. The workers' compensation judge shall consider the petition and the proposed agreement in open hearing and shall render a decision.
   A compromise and release differs from a commutation of compensation, as set forth in Section 316 of the Workers' Compensation Act, 77 P.S. § 604. While a compromise and release is the result of an

agree on the disposition of the award, the workers' compensation judge directed the insurer to issue a check payable to counsel for Husband and counsel for Wife. On October 7, 1999, the attorneys deposited a check from the insurer in the amount of $85,029.00 into an escrow account that requires the signatures of both attorneys in order to withdraw funds.

On November 4, 1999, the Lehigh County Domestic Relations Section filed a Contempt Petition alleging that Husband was in arrears by $1,437.04 as of the date of the petition. The Court dismissed the Petition on January 13, 2000, "due to the defendant's present medical condition and pending workers' compensation settlement claim ." On June 29, 2000, the Domestic Relations Section again filed a Contempt Petition, this time alleging arrears of $3,921.97. Husband then filed a Petition for Modification on July 27, 2000, seeking release of the funds held in escrow. By Order dated October 6, 2000, the trial court denied the Petition. Husband made no alimony payments to Wife from August 19, 1999 until March 22, 2001. He argues that "Wife's alimony payments ceased as a result of Husband's funds being frozen due to Wife's insistence that she was entitled to a portion of her Husband's workers' compensation lump sum award." Appellant's Brief at 13. While Husband blames Wife for the fact that he did not make timely alimony payments, the fact remains that he did not fulfill his obligation toward her.

In April of 2000, the Social Security Administration determined that Husband is disabled and awarded him benefits in excess of $1,000.00 per month. He began receiving payments in May of 2000. On March 22, 2001, the parties stipulated to the release of $9,437.04 from the escrow account to satisfy Husband's alimony obligation through April of 2001. No arrearages have accumulated since that time. By Order dated April 5, 2001, the trial court held that Husband was not in contempt, noted the recent lump sum payment to Wife and dismissed the Rule to Show Cause issued following the filing of the June 29, 2000 contempt petition.

agreement of the parties, a request for commutation is directed to the Workers' Compensation Appeal Board for determination.

Upon review of a Joint Submission of Stipulated Facts and the briefs of the parties, the trial court, by Order dated November 26, 2001, directed that the remaining $76,388.16 of the compromise and release proceeds be placed in escrow with the Domestic Relations Section in an account to be drawn upon to meet Husband's alimony obligation.[4] The trial court noted that the lump sum award replaced Husband's future income and expressed concern about Husband's history of allowing arrearages to accumulate as well as his exposure to future health care expenses. The trial court therefore considered it necessary to segregate the funds to ensure that Wife would receive her alimony payments. Husband filed a timely appeal from the Order of the trial court, and the Superior Court affirmed in a published opinion. *Dudas v. Pietrzykowski*, 813 A.2d 1 (Pa.Super.2002).

## DISCUSSION

■ The standard of review in spousal support cases "is to determine whether the trial court has, in deciding the case, abused its discretion; that is, committed not merely an error of judgment, but has overridden or misapplied the law, or has exercised judgment which is manifestly unreasonable, or the product of partiality, prejudice, bias or ill will as demonstrated by the evidence of record." *Wagoner v. Wagoner*, 538 Pa. 265, 648 A.2d 299, 301 (1994). Bearing in mind this standard, we now review the determination of the trial court, as affirmed by the Superior Court.

■ Husband asserts that the trial court erred in freezing the proceeds of the compromise and release in light of the fact that it dismissed the contempt petitions filed against him. It is true that the court did not hold Husband in contempt.

---

4. The trial court notes, "it was not disputed that $76,388.16 was the quoted premium for an immediate annuity paying $500.00 per month for the rest of Plaintiff–Wife's expected life." Trial Court Opinion, January 22, 2002 at 3. It must be emphasized that the Order dated November 26, 2001, did not direct that the funds be used to purchase an annuity for Wife's benefit. Instead, it provided that the $76,388.16 "be paid into escrow with the Domestic Relations Section in a sequestered account with a federally insured financial institution to be drawn upon monthly to meet [Husband's] alimony obligation...."

However, the Joint Submission of Stipulated Facts provides in relevant part, "[t]he parties entered into a Stipulation dated March 22, 2001, which authorized the release of $9,937.04 from the Quakertown National escrow account to satisfy an arrearage balance owed by [Husband] to [Wife]...." Accordingly, there was a sufficient basis in the record for the trial court to conclude that Husband had allowed significant arrearages to accrue. In support of its decision, the trial court cited *Petto v. Petto*, 372 Pa.Super. 558, 539 A.2d 1337 (1988). In *Petto*, husband and wife, who were the parents of two children, separated in September of 1984. One month later, husband moved to Brazil, taking with him bank funds and the children's bonds totaling $86,000.00. In 1987, the trial court issued a divorce decree requiring husband to pay wife $200.00 per month in child support, awarding the family residence and investment properties to wife, and directing wife to pay husband $12,419.43 as part of equitable distribution. Wife then requested the trial court to secure the monies she owed husband to ensure future child support payments. The trial court disagreed, and on appeal the Superior Court reversed, noting that failure to sequester the funds would "frustrate the objectives of justice." *Id.* at 1340. One of the reasons supporting the decision of the Superior Court was the fact that the obligor in *Petto* allowed support arrearages to accumulate for five months.[5] The fact that the trial court did not actually hold the obligor in contempt for his failure to make timely child support payments, did not deter the Superior Court from securing the funds in question.

We do not believe that a specific finding of contempt is required before a court may segregate funds to secure alimony payments. Pursuant to Section 3502(b) of the Divorce Code, 23 Pa.C.S. § 3502(b), the "court may impose a lien

---

5. The Superior Court noted, "[Husband's] history of not paying child support, absconding with the funds in the marital bank accounts and the children's bonds, coupled with his present lack of income, intent not to become gainfully employed, and residence in Rio de Janiero, Brazil, supports our holding that the funds due [Husband] must be sequestered and drawn upon monthly to meet [Husband's] support obligation for two teenage children. *Petto v. Petto*, 372 Pa.Super. 558, 539 A.2d 1337, 1340.

or charge upon property of a party as security for the payment of alimony or any other award for the other party." Accordingly, the trial court had the power to place Husband's assets in escrow in order to ensure the timely disbursement of alimony payments. The actual question before us is whether the trial court properly exercised that power.

■ Husband became entitled to the sum of money at issue in this case through the Workers Compensation Act, Act of June 2, 1915, as amended. Courts "have recognized that an important purpose of the Act is to provide a regular form of future income ... in installments over long periods and even for [a] lifetime in some cases." *Bush v. Workers' Compensation Appeal Board (Swatara Coal Company)*, 802 A.2d 679, 683 (Pa.Cmwlth.2002) (citations omitted). Therefore, we agree with the trial court that the lump sum payment, which Husband's employer paid as a result of the compromise and release, was intended to compensate him for lost wages. Where, as in this case, a trial court orders that a sum of money that substitutes for income be placed in escrow based on a history of arrearages, the court must consider Section 3703 of the Divorce Code, which provides in relevant part:

Enforcement of arrearages

If at any time a party is in arrears in the payment of alimony ... the court may, after hearing, in order to effect payment of the arrearages:

* * *

(3) Attach no more than 50% of the wages of the party.

23 Pa.C.S. § 3703. Accordingly, while the trial court had the discretion to attach up to one-half of the lump sum payment, it erred as a matter of law in attaching more than that amount because it was a substitute for wages.

■ Based on the Joint Statement of Stipulated Facts, it is apparent that the trial court was aware that as of April 3, 2000, Husband had been awarded social security benefits in excess of $1,000.00 per month. We note that social security benefits may be garnished for enforcement of alimony pursu-

ant to Section 459 of the Social Security Act, 42 U.S.C. § 659.[6] Because the partial garnishment of Husband's social security benefits would provide a secure and steady source of Husband's $500.00 per month alimony obligation, we believe that the trial court abused its discretion in failing to consider this alternative. Accordingly, on remand the trial court must give due attention to Husband's social security benefits and the role that they play in his ability to fulfill his obligation to provide support to Wife.

## CONCLUSION

The trial court erred in placing in escrow the entire amount of the proceeds of Husband's workers' compensation compromise and release. Furthermore, the court abused its discretion by not giving due consideration to garnishing Husband's social security benefits, an option that would allow for Husband to regain control of his lump sum workers' compensation

6. Section 459 of the Social Security Act, 42 U.S.C. § 659, provides in relevant part:

§ 659. Consent by the United States to income withholding, garnishment, and similar proceedings for enforcement of child support and alimony obligations.
(a) Consent to support enforcement
Notwithstanding any other provision of law ... effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the Armed Forces of the United States, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to withholding in accordance with State law ... and regulations of the Secretary ..., and to any other legal process brought, by a State agency administering a program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony.
(b) Consent to requirements applicable to private person
With respect to notice to withhold income ..., or any other order or process to enforce support obligations against an individual (if the order or process contains or is accompanied by sufficient data to permit prompt identification of the individual and the moneys involved), each governmental entity specified in subsection (a) of this section shall be subject to the same requirements as would apply if the entity were a private person, except as otherwise provided in this section.

award while ensuring that Wife receives the alimony payments to which she is clearly entitled. Accordingly, we reverse the Order of the Superior Court and remand this matter to the trial court for further proceedings consistent with this Opinion.

Former Justice Lamb did not participate in the decision of this case.

Justice SAYLOR concurs in the result.