## Abel v. Sciubba

C.P. of Allegheny County, no. FD 01-4352-003.

*Cassandra Abel,* pro se.
*Jerome DeRiso,* for defendant.

WECHT, *A.J.,* January 21, 2010—Defendant Richard Sciubba (Father) filed exceptions to recommendations issued by Hearing Officer Bingman following a July 15, 2009 child support hearing. Plaintiff Cassandra Abel (Mother) appeared for that hearing. Father did not. The hearing officer developed the record, and subsequently recommended an attachment of Father's lump sum settlement payment from a civil lawsuit, with the amount in excess of the arrears going into escrow. The escrow would cover Father's support obligation at the current support rate until the children are no longer minors. The hearing officer found that Father was capable of full-time minimum wage employment, but that he currently was not working and was on assistance.

Father argued on exceptions that the hearing officer erred in establishing the escrow for the lump sum payment and that the order is not "within the range of the appropriate guidelines." Father asserts that there is no statutory or decisional law supporting establishment of this escrow. Father acknowledges that there are decisions allowing escrow in support cases. But Father argues that

these cases are inapposite because the escrow in those instances was established through equitable distribution, and also because there is no history of non-payment here as there was in those cases. Father also complains that the hearing officer deviated upward from the guideline amount because Father was receiving the lump sum.

In the *Petto* case, the mother was directed to pay the father $12,419 as part of equitable distribution. *Petto v. Petto,* 372 Pa. Super. 558, 560, 539 A.2d 1337, 1338 (1988). The mother filed a petition asking the trial court to use the amount due the father from equitable distribution to ensure future child support payments. *Id.* The trial court denied the request. *Id.* At the time of that denial, the father had been sporadically employed for years prior to entry of the divorce decree, had moved to Brazil after the separation, had taken money from the parties' and children's bank accounts without the mother's knowledge or consent, and had failed to report any income since his move to Brazil. *Id.* Additionally, at the time of the denial, the father was months in arrears on his child support payments. *Id.* at 564, 539 A.2d at 1339.

The Superior Court reversed, finding authority in 23 Pa.S. §403(a) (now 23 Pa.C.S. §3505(a)), which allows issuance of an injunction to prevent a party from alienating property in order to defeat a child support award. *Id.* The Superior Court found section 403(a) applicable through Pa.R.C.P. 1910.43, which allowed the mother's petition for special relief. *Id.* Relying on the father's history of not making payments and of removing marital funds from the jurisdiction, and recognizing his lack of

income, the Superior Court ordered the money the mother owed through equitable distribution to be paid into a sequestered account to ensure future child support payments. *Id.* at 565, 539 A.2d at 1340.

In the *Nika* case, the trial court ordered that the husband's proceeds from the sale of the marital home were to be held by his attorney to pay off his support arrearages. *Nika v. Nika,* 382 Pa. Super. 551, 554, 555 A.2d 1337, 1339 (1989). The trial court further ordered that any amount over his arrearages was to be held in escrow by the attorney and was not to be paid directly to the husband due to husband's continued contempt and failure to pay. *Id.* The trial court further asserted that the husband was a gambler who was likely to squander the proceeds and had caused his business to fail in order to discourage claims for support. *Id.* The trial court ordered that the money be deposited with the domestic relations office to create a credit from which the wife's alimony could be paid. *Id.* at 555, 555 A.2d at 1340.

The Superior Court upheld the trial court's decision under the court's equity power to protect the interests of the parties, in accordance with 23 Pa. S. §401(c), now 23 Pa.C.S. §3323(f). *Id.* at 558, 555 A.2d at 1341. In so ruling, the Superior Court relied upon the wife's history of mental problems that affected her economic opportunities as well as the husband's record of failing to meet his support obligations. *Id.*

In another case, the Supreme Court allowed workers' compensation lump sum payments to be placed in escrow to ensure alimony payments. *Dudas v. Pietrzykowski,*

578 Pa. 20, 27, 849 A.2d 582, 586 (2004). The husband had not paid alimony for over a year and a half prior to paying off his arrears from his lump sum payment. *Id.* at 24, 849 A.2d at 584. The trial court put the rest of the lump sum into escrow to ensure future payments. *Id.* at 25, 849 A.2d at 584-85. The court relied on parts of the alimony statute that allow income to be attached when there are arrears, and considered the workers' compensation award to be an income substitute. *Id.* at 27, 849 A.2d at 586. The Supreme Court concluded that the trial court had the authority to place assets in escrow to ensure alimony payments, even though it concluded that the trial court had not exercised that authority properly. *Id.*

In the instant case, Mother argued that the escrow would save Father from worrying about contempt exposure that she predicted he would face because, as she testified, "he's on drugs" (Tr., at 4) and "[h]e's always in jail" (Tr., at 6).

There is not enough similarity to the above-discussed cases to allow the escrow here. This court cannot rely on the statutory provisions cited in those appellate cases, which deal with the court's equity powers concerning divorce and property rights, to find authority for the escrow. There are two prior contempt orders in this case. But both of those orders are almost five years old. Further, there was no notice to Father that an escrow account might be used to secure future payments. The Superior Court has held that an obligor was not afforded a full and fair opportunity to air all his claims when he had no notice of an attempt to guarantee future child support payments through an escrow account. *Rittel v. Rittel,* 335

Pa. Super. 550, 558, 485 A.2d 30, 35 (1984). While it is plain and understandable that the hearing officer sought in this case to ensure support for the children, there was no applicable authority for her to do so.

The case will be remanded, but only for re-calculation. Because Father failed to appear, he waived any opportunity for a de novo hearing.

An order in accordance with this memorandum follows.

## ORDER

And now, January 21, 2010, following due consideration and for the reasons set forth in the accompanying memorandum, it is hereby ordered, adjudged, and decreed that defendant's exceptions to the recommendations of Hearing Officer Bingman, Esquire dated July 15, 2009 are granted. The hearing officer shall determine defendant's monthly support obligation and arrears based upon his earning capacity, and shall make a recommendation for his monthly payment, including a payment on arrears.