**S.M.C., Appellee**

v.

**W.P.C., Appellant.**

Superior Court of Pennsylvania.

Argued March 27, 2012.
Filed April 24, 2012.

file such an affidavit without carefully review-ing the documents." *Id.*

Mark R. Alberts, Pittsburgh, for appellant.

Ronald D. Barber, Pittsburgh, for appellee.

BEFORE: DONOHUE, LAZARUS and OTT, JJ.

OPINION BY DONOHUE, J.:

W.P.C. ("Husband") appeals from the order entered May 9, 2011, by the Court of Common Pleas, Allegheny County, dismissing his exceptions to, and making final, the order entered by the hearing officer which, *inter alia*, granted S.M.C. ("Wife") spousal support and ordered Husband to pay a portion of Wife's attorney's fees. For the following reasons, we affirm.

The trial court summarized the facts of the case as follows:

At the complex support hearing on October 18, 2010, both Wife [ ] and Husband testified that they were married for sixteen years, and that Wife left the marital home on June 9, 2010. Their marriage had produced one child, [E.C.], age 7, at the time of the October 2010 hearing.

Wife testified that she had been seeing a marriage counselor for three years prior to separation, but started actively looking for a new apartment and planning to move from the martial [sic] residence approximately two months prior to her doing so on June 9, 2010. Wife testified that she left the martial [sic] home because Husband was verbally abusive and was angry over a cruise which wife took with female friends in April 2010. Wife testified that she had originally booked the cruise in November 2009 and that Husband didn't believe it was proper for a married woman to go on a cruise without her husband. Wife also testified that while on her cruise, Husband sent her 'mean messages' and she was afraid to go home. Wife testified that she returned to the martial [sic] home after the cruise because her daughter was there, but that her husband repeatedly called her a whore and after her return from the cruise, he was emotionally abusive and bullied her. She testified that she and her daughter, [E.C.], were fearful whenever they would hear him come home.

Wife testified that when she left the martial [sic] home on June 9, 2010, she intended it to be a final separation, and that she met Lance Markle for the first time on June 12, 2010. Wife testified that she sees him at least once a week, and sometimes more frequently. She has gone on both group dates and individual dates with him and they have gone on a group vacation with friends.

Wife testified that she lives only with her daughter, [E.C.]

At the October 18, 2010 hearing, Husband testified that Wife's cruise in April 2010 was a 'boiling point' in their relationship; that he didn't believe a married woman should be going on a cruise without her husband; and that he was angry that she went despite his objections. Husband testified that he had learned about his wife's relationship with another man several weeks prior to the hearing in October of 2010, and that he had hired a private investigator to follow her. Husband testified that he still considered himself married 'in every way, shape and form,' and that he was surprised when Wife left the martial [sic] residence on June 9, 2010. Husband testified that he did not attend marriage counseling with Wife for the three years that she attended prior to separation, but that he did attend marriage counseling following Wife's departure from the martial [sic] residence, until Wife decided to terminate the counseling. Husband testified that Wife gave him the impression that she was in a physical relationship with another man. The hearing officer sustained Wife's objections to Husband's questions concerning her conduct with Mr. Markle after separation, ruling that post[ ]separation conduct is not relevant to an entitlement defense.

Following the October 18, 2010 hearing, Hearing Officer Ferber made the following recommendations: 1.) Husband is to pay Wife $7,783 per month, $2,211 for child support and the remaining $5,562 in spousal support. Husband was also to continue to provide medical insurance for wife and child, and pay 61% of all unreimbursed medical expenses. Any extracurricular activities that [E.C.] participates in will be paid 61% by Husband and 39% by Wife. 2.) Husband's arrearages were set at $32,897.77 as of October 19, 2010. Husband was to pay Wife $30,000 in a lump sum payment within 10 days of the hearing and $250/month until the arrearages were paid in full. 3.) Wife was awarded $3,500 in counsel fees. Hearing Officer Ferber also found that Husband's precipitous sale of his 1/3rd interest in the family-owned Conroy Foods[,] Inc. was a voluntary reduction in income motivated by his support obligation and his beliefs regarding the divorce proceedings.

Trial Court Opinion, 9/14/11, at 2–4.

Husband filed exceptions to the hearing officer's recommendations on November 5, 2010. The trial court held oral argument on February 3, 2011, after which it denied his exceptions and converted the hearing officer's temporary order into a final order.

This timely appeal follows, wherein Husband raises five issues for our review:

A. Whether the trial court erred in upholding the hearing officer's exclusion of evidence in relation to Wife's post-separation conduct[?]

B. Whether the trial court erred in awarding spousal support to Wife and in concluding that post-separation misconduct no longer constitutes an entitlement defense to an award of spousal support[?]

C. Whether the trial court erred and abused its discretion in directing Husband to make a lump sum payment of $30,000 to Wife[?]

D. Whether the trial court erred and abused its discretion in finding that the sale of Husband's one-third interest in Conroy Foods, Inc. was a voluntary reduction in his income[?]

E. Whether the trial court erred and abused its discretion in awarding Wife counsel fees of $3,500[?]

Husband's Brief at 4.

■ We review spousal support cases for abuse of discretion. *Dudas v. Pietrzykowski*, 578 Pa. 20, 25, 849 A.2d 582, 585 (2004). In order to overturn the decision of the trial court, we must find that it "committed not merely an error of judgment, but has overridden or misapplied the law, or has exercised judgment which is manifestly unreasonable, or the product of partiality, prejudice, bias or ill will as demonstrated by the evidence of record." *Id.*

### Entitlement to Spousal Support

Husband's first three issues on appeal address the trial court's determination that Wife is entitled to spousal support. He asserts that it was error for the trial court to award spousal support in this case because of her voluntary departure from the marital residence, and her exposure of Husband to indignities by going on a cruise with her friends prior to separation and engaging in an extramarital affair post-separation. Husband's Brief at 9–16. He also argues that the trial court erred by excluding evidence of Wife's post-separation affair. *Id.* at 12–14.

■ The law pertaining to spousal support in Pennsylvania is clear: "Married persons are liable for the support of each other according to their respective abilities to provide support as provided by law." 23 Pa.C.S.A. § 4321(1). A long recognized exception to the obligation to pay spousal support exists where the recipient spouse conducts him or herself in a manner that

would constitute grounds for a fault-based divorce.[1] *See, e.g., Hoffman v. Hoffman*, 762 A.2d 766, 770 (Pa.Super.2000) (*en banc*); *Commonwealth ex rel. Brobst v. Brobst*, 173 Pa.Super. 171, 96 A.2d 194, 195 (1953). Pursuant to the Divorce Code, a fault-based divorce may be granted to the "innocent and injured spouse" where the other spouse has:

(1) Committed willful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for the period of one or more years.

(2) Committed adultery.

(3) By cruel and barbarous treatment, endangered the life or health of the injured and innocent spouse.

(4) Knowingly entered into a bigamous marriage while a former marriage is still subsisting.

(5) Been sentenced to imprisonment for a term of two or more years upon conviction of having committed a crime.

(6) Offered such indignities to the innocent and injured spouse as to render that spouse's condition intolerable and life burdensome.

23 Pa.C.S.A. § 3301(a).

■ Initially, we note that all of Husband's arguments regarding Wife's non-entitlement to spousal support are grounds for a fault-based divorce, *to wit,* indignities and desertion. *See* 23 Pa.C.S.A. § 3301(a)(1), (6). We begin with Husband's argument that he was subjected to indignities based upon Wife's post-separation extramarital affair, and that the trial court erred by excluding evidence of the affair.[2] Husband's Brief at 12–16. The

1. The concept of a no-fault divorce was introduced into law with the Divorce Code of 1980. *See Perlberger v. Perlberger*, 426 Pa.Super. 245, 626 A.2d 1186, 1194 (1993); 23 Pa.C.S.A. § 3301. Prior to that, the law only provided for fault-based divorce.

2. Husband did not argue before the hearing officer and does not argue on appeal that

trial court found that Wife's post-separation conduct was irrelevant for purposes of determining her entitlement to spousal support based upon this Court's decision in *Jayne v. Jayne*, 443 Pa.Super. 664, 663 A.2d 169 (1995), and thus her post-separation relationship with another man was not a basis for denying Wife spousal support. Trial Court Opinion, 9/14/11, at 5–7.

In *Jayne*, the wife testified that she believed her husband was engaging in an extramarital affair after they separated. *Jayne*, 663 A.2d at 172–73. The hearing master also took judicial notice of protection from abuse proceedings held because of an incident between the couple that occurred shortly after the husband left the home. *Id.* at 173. Based on this evidence, the hearing master concluded that the wife had presented sufficient evidence to grant a divorce on the ground of indignities. *Id.* The husband appealed and this Court reversed. In arriving at its decision, we stated:

> [W]e have held that the marital misconduct which must be considered with regard to a divorce based upon indignities is that misconduct which occurred prior to the right to divorce accruing. [*Schuback v.*] *Schuback*, [412 Pa.Super. 233] 603 A.2d [194,] 196 [ (Pa.Super.1992) ]. As a result, any misconduct in which Husband may have engaged after the separation is not to be considered unless it goes to support misconduct occurring prior to the accrual of the right to divorce. *Bonawitz v. Bonawitz*, [246 Pa.Super. 257] 369 A.2d 1310, 1312

(1976). In other words, Husband's conduct after Wife's filing of the complaint for divorce should not be considered in deciding the sufficiency of the allegations in that complaint for a divorce based on indignities unless it is related to or supports similar conduct prior to the accrual of the right to divorce. *See McCaskey v. McCaskey*, [253 Pa.Super. 360] 385 A.2d 378 (1978) (holding that proof of indignities occurring after parties' separation was admissible as evidence which shed light upon the behavior of the parties prior to separation); *Lee v. Lee*, [185 Pa.Super. 252] 137 A.2d 827 (1958) (holding that the conduct of the parties after separation is relevant for the purpose of shedding light upon their behavior prior to the separation).

*Id.* (emphasis omitted). Because the extramarital affair and protection from abuse proceedings both involved post-separation conduct by the husband, and the record did not support a finding that they shed light upon the behavior of the parties pre-separation, the *Jayne* Court concluded that the evidence should not have been considered by the hearing master. *Id.*

■ Turning to the case *sub judice*, we agree with the trial court that the holding announced in *Jayne* case precludes the consideration of post-separation conduct in determining whether Wife is entitled to spousal support. Although Husband is correct that the holding does not specifically address spousal support, as we stated above, spousal support can only be denied if the recipient spouse exhibits conduct

---

Wife's affair constituted adultery; rather, he raised the issue of Wife's post-separation affair solely on the basis that it constitutes indignities. *See* N.T., 10/18/10, at 278–79; Husband's Brief at 9–10, 11–12, 13–14, 16. "[A] spouse's relationship with a member of the opposite sex, other than his or her spouse, may constitute an indignity even when the evidence is insufficient to sustain a charge of

adultery." *Jayne v. Jayne*, 443 Pa.Super. 664, 663 A.2d 169, 173 (1995) (quoting *Narbesky v. Narbesky*, 255 Pa.Super. 48, 386 A.2d 129, 132 (1978)). Case law defines "adultery" as voluntary sexual intercourse between a married person and someone other than his or her spouse. *Commonwealth v. Moon*, 151 Pa.Super. 555, 30 A.2d 704, 708 (1943).

that would constitute a ground for fault-based divorce. *A fortiori*, if there is no evidence of conduct that would constitute grounds for a fault-based divorce, then a spouse is entitled to support. Because post-separation conduct does not constitute a basis for granting a fault-based divorce without evidence that it sheds light on the pre-separation conduct of the parties, it likewise cannot be a basis for precluding the award of spousal support.[3]

■ The record reflects that Wife testified that she met the man she is dating on June 12, 2009, three days after she left Husband. N.T., 10/18/10, at 73. Husband testified that he learned of the affair a couple of weeks prior to the October 2010 hearing, and that Wife told him she never cheated on him when they were living together. *Id.* at 275–76, 286. The record does not support a finding that Wife engaged in an extramarital affair prior to separation. Likewise, just as in *Jayne*, the record does not support a finding that Wife's post-separation conduct shed light on her conduct prior to separation. The evidence of Wife's post-separation affair was therefore irrelevant, as it did not constitute a ground for fault-based divorce based on indignities. As such, the hearing officer correctly excluded evidence of Wife's post-separation affair, and the trial court did not abuse its discretion by denying Husband's exceptions on that basis.

Husband also contends that Wife should not have been granted spousal support because she went on a cruise without him, over his objection, which he argues gives rise to a finding of indignities, as he was angry and hurt by her behavior.[4] Husband's Brief at 12. We disagree.

■■ There is no specific definition or test as to what constitutes indignities. "Indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement." *Hunsinger v. Hunsinger*, 381 Pa.Super. 453, 554 A.2d 89, 91 (1989) (quoting *McKrell v. McKrell*, 352 Pa. 173, 180, 42 A.2d 609, 612 (1945)). A single act by a spouse, however, will not give rise to a

3. We note that our decision in this case is consistent with existing precedent and the intent of our legislature. Our legislature has determined the date of separation is a line of demarcation in a divorce proceeding. *See* 23 Pa.C.S.A. § 3301(d)(1) (date of separation is the date the two-year clock begins to run for a no-fault divorce on the ground of irretrievable breakdown); 23 Pa.C.S.A. §§ 3501(a)(4), 3505(b)(1)(i) (date of separation is the date upon which the composition of the marital estate is determined); 23 Pa.C.S.A. § 3505(b)(2)(ii) (date of separation is one of the dates used to determine the value of marital property); 23 Pa.C.S.A. § 3501(a.1) (date of separation is one of the dates set by the legislature to determine the increase in value of nonmarital property for equitable distribution); 23 Pa.C.S.A. § 3701(b)(14) (precluding courts from considering post-separation conduct, other than abuse of one spouse by the other, when determining whether to grant alimony). Furthermore, courts in this Commonwealth have historically looked to the divorce statute to determine whether a spouse is entitled to support. *See, e.g., Hoffman*, 762 A.2d at 770; *Brobst*, 96 A.2d at 195; 23 Pa.C.S.A. § 4321(1).

4. Wife asserts that Husband raises this issue for the first time on appeal. *See* Wife's Brief at 9. However, our review of the record reveals that Husband raised this argument before the hearing officer. *See* N.T., 10/18/10, at 277–78, 282–83. We also disagree that the issue is not fairly suggested by his Statement of Questions Involved. *See* Wife's Brief at 10 n. 1. Contrary to Wife's contention that the issues relate solely to post-separation conduct, Husband clearly frames his second issue by arguing error in the award of spousal support *and* the conclusion that post-separation conduct was not admissible. *See* Husband's Brief at 4; *supra* pp. 1184–85.

finding of indignities. Rather, "indignities 'must consist of a course of conduct or continued treatment which renders the condition of the innocent party intolerable and his or her life burdensome … a course of conduct as is humiliating, degrading and inconsistent with the position and relation as a spouse.'" *Id.*

 Clearly, the act of going on a single vacation with friends despite Husband's protestations does not qualify under the above definition of indignities. Furthermore, Husband's testimony that he was "angry" and "insulted" by Wife going on the cruise is insufficient to show that her travel rendered his condition intolerable or his life burdensome. *See* N.T., 10/18/10, at 283; 23 Pa.C.S.A. § 3301(a)(6); *Hunsinger,* 554 A.2d at 91. As such, the trial court did not abuse its discretion by granting Wife spousal support.

Husband further argues that Wife was not entitled to spousal support because she left the marital home without cause and against his wishes, i.e., a claim of desertion. *See* 23 Pa.C.S.A. § 3301(a)(1). The trial court found that Wife was justified in leaving the marital residence based upon Husband's emotional abuse of Wife. Trial Court Opinion, 9/14/11, at 4–5.

 In order to overcome a claim of desertion, the trial court must find that the departing spouse presented evidence of "an adequate legal cause for leaving." *Clendenning v. Clendenning,* 392 Pa.Super. 33, 572 A.2d 18, 20 (1990) (citations omitted).

> The phrase adequate legal cause for leaving is not subject to exact definition. It must be interpreted on the facts of each case. A spouse who over a period of time suffers psychological oppression may be harmed as much as a spouse who over a period of time suffers physical injury. The law must recognize this

harm and not force the oppressed spouse to remain in the unhappy environment in order to be entitled to support. On the other hand, the law should not impose on a spouse the duty of support where his or her mate departs the marital residence maliciously or casually on a whim or caprice.

*Hoffman,* 762 A.2d at 771–72. Because "adequate legal cause" is not specifically defined, we look to prior case law to help make that determination. *See Clendenning,* 572 A.2d at 20.

In *Clendenning,* testimony by a wife regarding her husband's anger, yelling, beating his cane on a table, and demands that she conduct herself in accordance with his wishes was found to be an adequate legal cause for the wife to have left the marital home. *Clendenning,* 572 A.2d at 19, 21. In *Hoffman,* the "disintegration of the parties' relationship" and the fact that the husband "severely curtailed" the wife's access to money was adequate legal cause for the wife's departure. *Hoffman,* 762 A.2d at 772. In *Myers v. Myers,* 405 Pa.Super. 290, 592 A.2d 339, 342 (1991), *superseded by Rule on other grounds as stated in Calibeo v. Calibeo,* 443 Pa.Super. 694, 663 A.2d 184, 185 (1995), the wife testified that her husband pushed her once, yelled, and was very controlling of the couples' finances. *Id.* at 342. Although not free from doubt, this Court found the evidence to be sufficient to show that the wife had adequate legal cause to leave the marital home. *Id.*

 In the case at bar, Wife testified that Husband was "emotionally abusive." N.T., 10/18/10, at 39, 68. She indicated that she attended marriage counseling for three years before leaving in an attempt to save their marriage, but that Husband did not participate. *Id.* at 60–61. Wife testified that Husband sent her "mean messages" while she was on a cruise with her

friends, calling her a "whore" and telling her to "suck his dick," which caused her to be afraid to return to the home. *Id.* at 62. Wife stated that Husband "bullied" her, and that she and E.C. were fearful when they knew Husband was coming home. *Id.* at 68.

Based upon existing precedent, we conclude that there was sufficient evidence for the trial court to conclude that Wife had adequate legal cause to leave the marital home, and that she did not depart "maliciously or casually on a whim or caprice." *See Hoffman,* 762 A.2d at 771–72. As such, the trial court did not abuse its discretion by granting Wife spousal support on this basis.

▆▆▆ Husband's third issue—that the trial court erred by ordering him to make a lump sum payment of $30,000 to Wife to satisfy the bulk of the spousal support arrears owed—is based solely on his argument that the trial court erred by ordering him to pay spousal support to Wife *ab initio.* *See* Husband's Brief at 17. In other words, since Wife was not entitled to spousal support, he can only be charged arrearages for child support, and the amount owed is significantly less. Based on our resolution of the above issues, however, we conclude that the trial court did not abuse its discretion by ordering Husband to pay Wife spousal support. *See* 23 Pa.C.S.A. § 4321(1); *Hoffman,* 762 A.2d at 770. Therefore, this argument is without merit.

### Sale of Stock

▆▆▆ As his fourth issue on appeal, Husband argues that the trial court abused its discretion by finding that the sale of his one-third interest in Conroy Foods, Inc. was a voluntary reduction of his income, as there was no evidence presented that the sale "was anything other than an arms-length transaction." Hus-

band's Brief at 17. However, Husband fails to cite any legal authority in support of this claim. Thus, this claim is waived. Pa.R.A.P. 2119(a); *see also Rettger v. UPMC Shadyside,* 991 A.2d 915, 932 (Pa.Super.2010), *appeal denied,* 609 Pa. 698, 15 A.3d 491 (2011).

### Counsel Fees

▆▆▆ As his final issue on appeal, Husband argues that the trial court abused its discretion by awarding Wife $3,500 in counsel fees. Husband's Brief at 18. The award of counsel fees in a spousal support action is governed by statute, which states, in relevant part: "If an obligee prevails in a proceeding [ ... ] to obtain a support order, the court may assess against the obligor filing fees, reasonable attorney fees and necessary travel and other reasonable costs and expenses incurred by the obligee and the obligee's witnesses." 23 Pa.C.S.A. § 4351(a). Our Supreme Court has stated that a court must look at the totality of the circumstances of a case to determine whether the award of counsel fees is warranted. *Bowser v. Blom,* 569 Pa. 609, 619, 807 A.2d 830, 836 (2002). The *Bowser* Court did not set forth a strict test for the trial court to employ in exercising its discretion, but discussed several factors that could be considered in determining if the award of counsel fees is appropriate. *Id.* at 619–20, 807 A.2d at 836–37. In *Bowser,* the conduct of the obligor in the litigation was at issue. Although the conduct of the obligor is one relevant factor to be considered, our Supreme Court stated it is certainly not the only relevant factor:

> We need not imagine or account for all conceivable relevant circumstances, in addition to the conduct of the obligor in the litigation, in order to render some guidance on the standard. It is enough to say that we envision cases, for example, where the necessity of an action to

secure support is unquestionable, and where the incomes of the parties is so disparate (with the obligor's income exceeding that of the obligee), or where the obligee's financial situation is so strained that the cost of the action would necessarily affect the child, that an award of counsel fees to the obligee would be appropriate or, in some instances, required. Thus, although we do not approve a strict needs-based model, the relative financial positions and financial needs of the parties certainly may be relevant.

*Id.* at 619–20, 807 A.2d at 836–37.

 Here, the trial court found there to be a "significant disparity in the financial positions of the parties and their ability to litigate this matter," as Husband's net monthly income was determined to be $21,972 and Wife's net monthly income was determined to be $1,189. Trial Court Opinion, 9/14/11, at 9. The trial court therefore found the award of counsel fees to be proper and appropriate. *Id.*

The record supports the trial court's findings. *See* Order, 10/19/10. Furthermore, the record reflects that Wife amassed $7,341 in attorney's fees related to litigating the support matter. *See* N.T., 10/18/10, at 29. Husband was therefore required to pay less than 50% of her legal fees. Because the parties' incomes are so disparate and the amount of fees to be paid by Husband was reasonable, we have no basis to conclude that the trial court abused its discretion.

Order affirmed.