J-A31031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| F. LESLIE GUNTER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KAREN KOONS A/K/A KAREN GUNTER | |
| Appellant | No. 798 MDA 2014 |

Appeal from the Order Entered April 10, 2014
In the Court of Common Pleas of York County
Civil Division at No: 2007-FC-1933-15

BEFORE:  BOWES, OTT, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                 **FILED FEBRUARY 09, 2015**

Karen Koons a/k/a/ Karen Gunter (Appellant) appeals from the April 10, 2014 order entered in the Court of Common Pleas of York County denying her exceptions to a Master's Report and Recommendation granting modification of alimony payments due to Appellant from her former husband, F. Leslie Gunter (Appellee).[1]  Following review, we affirm.

The trial court provided the following procedural background:

> [Appellee] and [Appellant] were divorced on March 7, 2013.  On May 1, 2013, [Appellee] filed a Petition for Amendment of Alimony.  On May 2, 2013, the court appointed

---

[1] The trial court issued its opinion and order on April 10, 2014, but it was not filed until the following day, April 11.  The trial court subsequently issued an amended order on April 14, entered on April 15, to correct the names of counsel.  We shall refer to the order appealed from as the April 10, 2014 order.

Divorce Master Cindy S. Conley, Esq., at the request of [Appellee], to hear the issue of alimony modification.

A preliminary conference was held on July 1, 2013. [Appellant] appeared as a self-represented litigant. At the conclusion of the preliminary conference, a hearing was scheduled for July 29, 2013. On July 15, 2013, [Appellant's] newly retained counsel filed an Application for Continuance because she wanted to independently confirm the reason for [Appellee's] termination from employment. Accordingly, the Master scheduled and held a telephone conference with both attorneys to agree on hearing procedures. No further continuance requests were submitted and the hearing was held as scheduled. Both parties were present with counsel and testified under oath. Both parties timely filed their proposed findings of fact on August 6, 2013 and the record was closed.

Master Conley filed her Report and Recommendation on September 6, 2013 granting an alimony reduction to [Appellee]. On September 19, 2014, [Appellant] timely filed Exceptions to the Master's Report and Recommendation. The transcript of the proceedings was filed on October 8, 2013. [Appellee] filed his Reply to [Appellant's] Exceptions on October 9, 2013.

Trial Court Opinion and Order, 4/10/14, at 1-2.

"[A] master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Moran v. Moran*, 839 A.2d 1091, 1095 (Pa. Super. 2003) (citing *Simeone v. Simeone*, 551. A.2d 219, 225 (Pa. Super. 1998)). A summary of the Master's report and recommendation follows.

The parties were married on September 24, 1982. They separated on October 9, 2007. Findings of Fact, Report and Recommendation of the

Master Regarding Alimony Modification (Findings of Fact), 9/6/13, at ¶ 7. They entered into a counseled agreement (Agreement) on August 6, 2012 that resolved their outstanding economic issues. *Id.* at ¶ 10. Their divorce was finalized on March 7, 2013. *Id.* at 9.

Pursuant to the terms of the Agreement, Appellee was required to make monthly alimony payments of $2,084 to Appellant until Appellant reached the age of 65 in 2016. *Id.* at ¶ 12. The Agreement also provided for modification of alimony in the event Appellee, "through no fault of his own, suffer[ed] a reduction in his earnings." *Id.* at ¶ 13.

When the parties entered into the Agreement, Appellee was earning an annual salary of approximately $90,000 as a Senior Technology Engineer at NORESCO. *Id.* at ¶ 15. He was terminated by NORESCO on February 26, 2013 for deficient performance. *Id.* at ¶¶ 16, 17.[2] He prevailed on an unemployment compensation claim filed with the Ohio Department of Job and Family Services, which determined that Appellee was discharged without just cause. *Id.* at 18. On March 25, 2013, Appellee secured employment with Comfort Systems USA Ohio as a Senior Technology Engineer at an annual salary of $68,000 with the possibility of bonuses. *Id.* at ¶ 19.

---

[2] Appellees' employment with NORESCO began in 2006. As noted above, the parties separated in 2007. At the hearing, Appellant acknowledged her observations relating to Appellee's work performance at NORESCO were limited to the period from his date of hire in 2006 until their separation in 2007. N.T., 7/29/13, at 57.

Appellee did not voluntarily lose his employment to avoid his support obligations and he suffered a decrease in income through no fault of his own. *Id.* at ¶¶ 22, 23. He mitigated his loss of income by securing new employment within a month of termination of his previous employment. *Id.* at ¶ 24. Pursuant to the Agreement, in the event Appellee suffered a reduction in income through no fault of his own, the modified alimony payment would be calculated using "the current alimony formula, including a hypothetical mortgage deviation for wife and an additional $200 per month." *Id.* at ¶ 14 (footnote omitted). At the time of the hearing, Appellee's net monthly income from his new employer was $4,093.95, not including any bonuses, and his overall effective tax rate was 28%. *Id.* at ¶¶ 20-21.

Appellant, who was awarded a bachelor's degree in education in 1975, did not work outside the home during the marriage but instead home-schooled the parties' two children. *Id.* at ¶ 5; N.T., 7/29/13, at 61. Other than alimony received from Appellee, her only source of income was earned from substitute teaching for various York County school districts, from which she grossed $6,246.00 in 2012. Findings of Fact at ¶¶ 25, 27. Due to the great number of available substitute teachers and the limited number of available positions, Appellant was unable to secure substitute teaching positions on a daily basis and failed to obtain other appropriate employment. *Id.* at ¶¶ 26, 28. In December 2010, the Domestic Relations Section held Appellant to an earning capacity of $8 per hour, or a net monthly earning

capacity of $1,171.65. *Id.* at ¶ 29. Absent any evidence to indicate Appellant was unable to meet the $8 per hour earning capacity, other than her apparent unwillingness to seek employment, her monthly net earning capacity was set at $1,171.65. *Id.* at ¶¶ 30, 31.

Using the applicable alimony formula, adding $200 per month per the Agreement, Appellee's recommended modified monthly alimony obligation was $1,547.67, a reduction of approximately $536 per month. Discussion Regarding Legal and Factual Issues and Conclusion of Law with Respect to Alimony, Report and Recommendation of Master, 9/6/13, at 13. In the event Appellee received cash bonuses from his employer, he would pay 40% of the bonus to Appellant, less 28% for taxes. *Id.* at 13-14.

As noted in the procedural history of this case, Appellant filed exceptions to the Master's Report and Recommendation, contending the modification of alimony was in contravention of the Agreement because Appellee was terminated for deficient performance, *i.e.*, through his own fault. Appellant's Exceptions, 9/19/13, at 2-3, ¶¶ 6, 11. Appellant asserted that the intention of the parties, as reflected in the Agreement, called for a reduction in alimony only if Appellee was fired through no fault of his own. *Id.* Citing 23 Pa.C.S.A. § 3105(c)[3] and **Brower v. Brower**, 604 A.2d 726

_____

[3] "In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding . . . alimony . . . shall not be subject to
*(Footnote Continued Next Page)*

(Pa. Super. 1992), Appellant argued that intent of the parties is a paramount consideration and that courts look to a written agreement to determine the intent. *Id.*

In his reply to the exceptions, Appellee argued that the Master properly concluded Appellee was not fired through any fault of his own; that the Agreement provided for modification in the event of termination without fault; and that the Agreement did not require termination for "intentional" actions, rather termination "through no fault of his own." Appellee's Reply to Exceptions, 10/9/13, at 1-2, ¶¶ 6, 11.

In its April 10, 2014 order, the trial court addressed the arguments raised in Paragraphs 6 and 11 of Appellant's exceptions.[4] With respect to the Master's conclusion that Appellee was not terminated for fault, raised in

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

modification by the court." 23 Pa.C.S.A. § 3105(c) (Certain provisions not subject to modification).

[4] Exception 6 reads, "Master should not have inferred that [Appellee] was not terminated for fault because [Appellee] received unemployment compensation because it is contradictory to Noresco's termination letter." Exceptions 11c and 11e read, "The modification was allowed in contravention of the agreement between the parties, which stipulated that [Appellee's] alimony amount could only be modified if [Appellee] experienced a reduction of income through no fault of his own" and "[The Master] found that the alimony amount could be modified because she found [Appellee's] firing was not intentional on his part. However, whether [Appellee's] loss of employment was intentional or not was not relevant to the terms of the agreement, which only contemplated that the alimony could be reduced if [Appellee] was fired through no fault of his own." Appellant's Exceptions, 9/19/13, at 2-3.

Paragraph 6, the trial court noted that the Master considered the evidence of record, including the award of unemployment compensation, the witnesses' credibility, the post-hearing submissions, and the applicable law. Memorandum Opinion and Order, 4/11/14, at 3. The trial court acknowledged that the Master found Appellee's testimony about his termination credible, while noting Appellant provided no credible competent evidence to the contrary, other than the letter from Appellee's former employer. *Id.* The trial court concluded, "[The] testimony, as well as the evidence presented, provides an ample basis for the Master's decision that [Appellee] was not terminated for fault." *Id.*

Citing *Herwig v. Herwig*, 420 A.2d 746, 748 (Pa. Super. 1980) (master's report, although advisory, is to be given fullest consideration by the court, especially on issues of credibility and witnesses), the trial court concluded:

> After review of the record, the [c]ourt does not find that the Master erred in considering the unemployment compensation determination. The unemployment compensation determination was just one of several factors weighed by the Master in making her ultimate decision. The Master heard and observed the parties and her credibility determination is given significant effect.

*Id.* at 3-4. Consequently, the trial court denied Exception 6.

Turning to Appellant's Paragraph 11 exceptions, specifically those raised in Paragraphs 11c and 11e, Appellant focused on the "fault" aspect of Appellee's firing. The trial court acknowledged Appellant's contention that Appellee was fired because of his need to play golf every day as well as the

- 7 -

argument that Appellee diminished his productivity by spending so many hours golfing. *Id.* at 4-5. The trial court looked to the Agreement, noting the court need only examine the writing itself to give effect to the parties' intent when the language is unambiguous. *Id.* at 6 (citing *Profit Wize Mktg. v. Wiest*, 812 A.2d 1270, 1274 (Pa. Super. 2002)). Here, the agreement "clearly states that the alimony may be modified if [Appellee] suffers a reduction in earning through no fault of his own." *Id.*[5] The court concluded the evidence indicated Appellee's earnings reduction was not his fault. Not only did the unemployment compensation review determine the termination was not for cause, but also the Master found credible testimony from Appellee that he was terminated due to the financial situation of the company. Noting Appellant did not produce any evidence to the contrary, other than the letter from NORESCO and speculation about the impact of his golfing activity, the trial court reiterated that a master's findings of credibility must be given the fullest consideration. *Id.* Finding no abuse of discretion in the Master's acceptance of Appellee's assertions over Appellant's, the trial court agreed with the Master that Appellee was not fired

_____

[5] We note that Appellant addresses various aspects of contract law in her brief, including the covenant of good faith and fair dealing, and contends Appellee should not be able to modify the Agreement unilaterally. Appellant's Brief at 5-6. While we do not offer comment on Appellant's recitation of the law, we find no support for her assertion that Appellee was attempting to modify the Agreement. Appellee was simply trying to modify his alimony payments in accord with the Agreement.

for cause. *Id.* at 6-7. Because the Master's modification of alimony was not in contravention of the Agreement, the trial court denied Exception 11c.

The trial court next considered Exception 11e, in which Appellant argued the Master's finding that Appellee's firing was "not intentional" is irrelevant in light of the language in the Agreement that the firing must be "through no fault of his own." The trial court explained that the Master looked to the Agreement, the terms of which permitted modification if earnings were reduced through no fault of Appellee. "After hearing the relevant testimony and evidence, the Master found that [Appellee's] termination was not his fault and that an alimony modification was appropriate under the agreement." *Id.* at 7. The Master proceeded to calculate the new alimony amount, calculations Appellant does not challenge. The trial court found modification appropriate under the terms of the parties' Agreement, recognizing the Master determined Appellee both demonstrated his employment change was not made to avoid support and mitigated his loss of income. *Id.* at 8 (citing *Ewing v. Ewing*, 843 A.2d 1282 (Pa. Super. 2004)). Consequently, the trial court denied Exception 11e.

Appellant filed a timely appeal from the trial court's order. On appeal, she presents one issue for this Court's consideration:

> A. Whether alimony should have been modified in contravention of the agreement of the parties where the agreement specified that [Appellee] will pay alimony at the rate of $2,084 per month until wife reached age 65 and where

alimony could only be modified if [Appellee] through no fault of his own suffered a reduction in income, but where [Appellee] was subsequently fired for deficient performance?

Appellant's Brief at vii.

This Court has explained the applicable standard of review as follows:

The role of an appellate court in reviewing alimony orders is limited; we review only to determine whether there has been an error of law or abuse of discretion by the trial court. Absent an abuse of discretion or insufficient evidence to sustain the support order, this Court will not interfere with the broad discretion afforded the trial court.

*Dalrymple v. Kilishek*, 920 A.2d 1275, 1278 (Pa. Super. 2007) (quoting

*Smith v. Smith*, 904 A.2d 15, 20 (Pa. Super. 2006)). To overturn the trial

court's decision based on an abuse of discretion, we must find that the trial

court has "committed not merely an error of judgment, but has overridden

or misapplied the law, or has exercised judgment which is manifestly

unreasonable, or the product of partiality, prejudice, bias or ill will as

demonstrated by the evidence of record." *S.M.C. v. W.P.C.*, 44 A.3d 1181,

1185 (Pa. Super. 2012) (quoting *Dudas v. Pietrzkowski*, 849 A.2d 582,

585 (Pa. 2004)).

We have reviewed the trial court's analysis of the law and the Master's

credibility determinations, as reflected above. Having done so, we conclude

the trial court neither committed error of law nor abused its discretion by

denying Appellant's exceptions to the Master's Report and Recommendation.

Because the Agreement permitted modification, because there is support in

the record for the Master's finding that Appellee's job loss was through no

fault of his own—thereby triggering the modification, and because the Master properly applied the alimony formula, plus $200 per the terms of the Agreement, we find no basis for disturbing the trial court's order denying Appellant's exceptions.  Therefore, we affirm the April 10, 2014 order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/9/2015