J-S16026-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.V., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: V.M.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1898 MDA 2018 |

Appeal from the Decree Entered October 17, 2018
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
85840

BEFORE:  OTT, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                          **FILED APRIL 09, 2019**

V.M.B. (Mother) appeals from the decree involuntarily terminating her parental rights to her minor child, L.V. (born May 2014) (Child), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1]  After careful review, we affirm.

A prior panel of this Court discussed the facts and procedural history underlying this appeal as follows:

> BCCYS became involved with regard to Child in July 2014 due to a report of "concerns about [Mother]'s care of Child[,] including her anger and frustration with parenting [Child]."  Notes of Testimony ("N.T."), 3/26/18, at 17; **see also** Exhibit 5.[3] As a result, services and monitoring were initiated.  **Id.**  Due to continuing concerns, on January 26, 2015, BCCYS filed a dependency petition.  **Id.** at 19; **see also** Exhibit 5.  Specifically,

_____

[1] By separate decree, dated April 23, 2018, the court terminated the parental rights of Lo.V. (Father).  Father has not appealed the termination of his parental rights.

BCCYS noted issues as to "Mother's inappropriate parenting, lack of stable housing, domestic violence issues and mental health issues." Exhibit 5 at 7, ¶ 20. On February 18, 2015, Child was adjudicated dependent but remained in the custody of Mother. **See** Exhibit 6. Thereafter, on April 20, 2015, BCCYS was granted emergency protective custody of Child. **See** Exhibit 9, at 1. BCCYS expressed "ongoing concern due to Mother's lack of cooperation with services, lack of supervision of Child, unstable housing and mental health issues." **See** Exhibit 9, at 2, ¶ 3. Notably, Mother was unable to continue residing with Child, with her friend, C.L., and obtained inappropriate housing.[4] N.T. at 20-21; **see also** Exhibit 9 at 2, ¶ 1. The court entered a shelter care order on April 27, 2015, after a hearing before and the recommendation of a master on April 22, 2015. Pursuant to order dated May 6, 2015, Child was fully committed to BCCYS. **See** Exhibit 13.

Subsequent to a motion to modify placement, on February 23, 2017, physical and legal custody of Child were transferred back to Mother. **See** Exhibit 18. However, on May 19, 2017, after the caseworker arrived at the home and heard Mother yell at Child, which continued, and observed Mother yank Child's security blanket away, BCCYS again sought, and was granted, emergency protective custody of Child. **See** Exhibit 19; **see also** N.T. at 28-29. Child has remained in care since. N.T. at 15.

DHS filed a petition to involuntarily terminate Mother's parental rights on December 6, 2017. The trial court held a hearing on March 26, 2018. In support thereof, BCCYS presented the testimony of Marsha Ganter, BCCYS Permanency Adoption and Foster Care Supervisor, who supervised the case until November 2017, N.T. at 17; and Kimberly Reinert, Commonwealth Clinical Group, who began treating Mother in October 2017 related to domestic violence and anger management, and was qualified as an expert in the area of mental health and domestic violence treatment, **id.** at 52-54. BCCYS further offered Exhibits 1 through 70, which were marked and admitted without objection. **Id.** at 9-14, 51-52. Mother, who was present and represented by counsel, testified on her own behalf. She additionally presented the testimony of C.L., a friend and purported source of support; and Trista Putt, licensed professional therapist, Pennsylvania Counseling Services. Child was represented by a guardian ad litem during this proceeding.[5]

By decree dated March 26, 2018, the trial court involuntarily terminated the parental rights of Mother to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[6] On April 23, 2018, Mother, through appointed counsel, filed a timely notice of appeal, as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

[3] The family had been known to BCCYS since 2012 as a result of concerns related to parenting, housing, and domestic violence. *See* Exhibit 5 at 5, ¶ 1.

[4] Specifically, one of the individuals with whom Mother resided was a perpetrator of sexual abuse. N.T. at 21; *see also* Exhibit 9 at 2, ¶ 1. Further, attempts to secure housing services and/or support through Opportunity House and Berks Counseling Center were unsuccessful. As testified by Ms. Ganter, as Mother "had been problematic in both of those programs in the past, neither of them would consider [taking] her back. Berks Counseling Center housing indicated that she had previously damaged property and was not able to return and Opportunity House indicated that she had been a behavioral problem in their facility previously." N.T. at 20-21.

[5] Notably, counsel was appointed pursuant to order dated December 26, 2017 in anticipation of the March 26, 2018 termination hearing. *See* Preliminary Order, 12/26/17. We observe that counsel was appointed "to act as Guardian Ad Litem for [Child], pursuant to the provisions of the Adoption Act of Pennsylvania, [23 Pa.C.S.A. § 2101, et seq.]" *Id.* While Molly Sanders, Esquire, or J. Kathleen Marcus, Esquire, were specifically appointed, for reasons unclear from the record, Melissa Krishock, Esquire, appeared at the hearing. At the hearing, Attorney Krishock argued in support of termination. N.T. at 125. She further submitted a brief to this Court in support of this position.

[6] This decree memorialized the decision placed by the court on the record at the hearing wherein the court stated, "...[M]om has not gotten to the point where she can do this. And it's been 30-some months. By

- 3 -

> the statute I believe I have to enter the decrees.  I
> will do so...."  N.T. at 126.

**See In the Interest of L.V.**, 198 A.3d 465, *1-2 (Pa. Super. 2018) (unpublished memorandum) (footnotes in original).

Following Mother's timely first appeal, a panel of this Court determined that Child, who was four years old at the time of the termination hearing, had been denied her statutory right to counsel pursuant to **In re Adoption of L.B.M.**, 161 A.3d 172, 180 (Pa. 2017) (plurality).  **Id.** at *5.  Accordingly, the panel vacated the termination decree without prejudice and remanded the matter to determine Child's legal preferences.  **Id.**  Following remand, Sharon M. Scullin, Esquire, was appointed to serve as Child's legal counsel.  **See** Order, 10/1/18, at 1.

On October 2, 2018, Mother filed a petition seeking to reinstate visits with Child.  **See** Petition to Reinstate Visits, 10/2/18, at 1.  Mother argued that BCCYS was attempting to prevent contact with Child to break the bond between Mother and Child.  **Id.** at 1-2.  Initially, the court issued a rule to show cause why the petition should not be granted, and scheduled a hearing on the petition.  **See** Order, 10/9/18, at 1.

On October 15, 2018, Attorney Scullin submitted a report detailing her meetings with Child, both alone and with B.S. (Foster Mother).  **See** Memorandum of Counsel to the Minor Child, 10/15/18, at 1.  The report was clear and unequivocal that Child prefers to be adopted by Foster Mother, to whom she refers as "Mommy."  **Id.** at 1-2.  Child wishes to be adopted as soon as possible, even if that means not seeing Mother, to whom Child refers

by first name. *Id.* Following receipt of counsel's report, the trial court re-entered the termination decree. *See* Decree, 10/17/18, at 1. Additionally, the trial court denied Mother's motion to reinstate visitation as moot. *See* Order.

Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises the following issues:

A. WHETHER THE HONORABLE COURT ERRED AS A MATTER OF LAW BY TERMINATING [MOTHER'S] PARENTAL RIGHTS AS TO HER CHILD?

B. WHETHER THE EVIDENCE PRESENTED BY [BCCYS] WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE HONORABLE COURT'S DECISION TO TERMINATE [MOTHER'S] PARENTAL RIGHTS IN THAT THE ALLEGATIONS RAISED BY [BCCYS] CANNOT AS A MATTER OF LAW BE SUFFICIENT GROUNDS TO TERMINATE PARENTAL RIGHTS?

C. WHETHER THE HONORABLE COURT ERRED IN AND ABUSED ITS DISCRETION IN TERMINATING [MOTHER'S] PARENTAL RIGHTS WHERE [MOTHER] HAS TAKEN SUFFICIENT STEPS TO REMEDIATE THE ISSUES THAT LED TO THE PLACEMENT OF [CHILD]?

D. WHETHER THE HONORABLE COURT ERRED AS A MATTER OF LAW IN TERMINATING [MOTHER'S] PARENTAL RIGHTS BASED ON THE LENGTH OF TIME [CHILD] HAS BEEN IN [CARE] WHERE THERE WERE COMPELLING REASONS NOT TO TERMINATE HER RIGHTS ESPECIALLY IN LIGHT OF THE STEPS TAKEN TO REMEDIATE THE ISSUES THAT LED TO THE INITIAL PLACEMENT AND THE FACT THAT REASONABLE STEPS WERE NOT TAKEN TO AVOID [CHILD'S] RETURN TO CARE?

E. WHETHER THE HONORABLE COURT ERRED AS A MATTER OF LAW AND DEPRIVED MOTHER OF HER RIGHTS BY GRANTING A HEARING ON MOTHER'S PETITION TO REINSTATE VISITS

FOLLOWING THE REMAND BY SUPERIOR COURT WHERE MOTHER HAD NOT SEEN [CHILD] FOR A PERIOD OF TIME ONLY TO DEEM THE HEARING MOOT BECAUSE COUNSEL FOR [CHILD], WHILE KNOWING THE PETITION WAS PENDING, [CHOSE] TO MEET WITH [CHILD] PRIOR TO A JUDICIAL DETERMINATION ON MOTHER'S PETITION?

Mother's Brief at 4-5.

We review cases involving the termination of parental rights mindful of

the following:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations

omitted).

Termination requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

- 6 -

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Instantly, we focus our analysis on subsection (a)(2) and (b). The relevant subsections of 23 Pa.C.S.A. § 2511 provide:

> **(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> *** * ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> *** * ***
>
> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied."

*See In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

At the outset, we note that Mother addresses her first four issues *en masse* in one section of argument. *See* Mother's Brief at 9-15. Essentially, she contends that BCCYS did not prove by clear and convincing evidence that grounds existed for termination under any subsection of the statute. *Id.* Mother claims that she was making efforts to remedy the conditions leading to Child's placement, and that it is not enough as a matter of law to terminate her rights "for becoming frustrated with a toddler's behavior and raising her voice or cursing at that child in an isolated incident." *Id.* at 15. Mother asserts that "there is no evidence whatsoever" that Child was negatively impacted by "the incident." *Id.* Mother's arguments are without merit.

The trial court explained:

> In this case, Mother has failed to alleviate the concerns which led to the child's placement, including failing to complete domestic violence counseling and failing to address the ongoing concerns regarding her mental health.

> While Mother has participated in court ordered services, she has not successfully completed treatment for domestic violence. Mother has attended domestic violence counseling since June 1, 2015. However, it was noted that Mother can be defensive when questioned about her history of domestic violence, fails to see the effects of domestic violence on children, and has limited insight on how to create healthy relationships and set boundaries. In

addition, Mother refuses to discuss her past relationship with [Child's] father, which has been a significant detriment to her counseling. After nearly two years of treatment, Mother's clinician reported that Mother has a poor prognosis and recommended that Mother not be in a primary caretaking role. Further, after an incident where Mother's behavior threatened a clinician, Mother was temporarily not allowed to continue her treatment.

Mother's mental health continues to be a concern. In 2015, Mother was diagnosed with an intermittent explosive disorder, and anger management continues to be part of her mental health treatment. Mother has expressed that some of her triggers, in regards to her feelings of frustration, are when children cry and when she is not listened to. Mother's clinician stated that those triggers were "extremely" concerning, given [Child's] age. While another clinician testified that Mother is making progress in regards to anger management, when questioned by the [c]ourt, the clinician testified that the majority of [Mother's] treatment is done through self-reporting. To date, Mother has not successfully completed [m]ental [h]ealth treatment. For these reasons, the [c]ourt finds that termination is warranted under this section.

Trial Court Opinion, 12/10/18, at 9.

Marsha Ganter, BCCYS permanency adoption and foster care supervisor, testified extensively regarding Mother's mental health issues, domestic violence with her partners, lack of familial support and stable housing, and angry and at times violent reactions to Child. *See* N.T., 3/26/18, at 17-42. Kimberly Reinert, who is employed by the Commonwealth Clinical Group, treated Mother for her domestic violence and anger management issues, and also testified extensively regarding Mother's lack of progress. *Id.* at 52-60. Ms. Reinert expressed her concerns that Mother would continue to lose her temper and have issues caring for Child full time. *Id.* at 59.

Mother does not deny that she has failed to complete domestic violence counseling and mental health treatment, but instead argues that she has

"made strides" in both. **See** Mother's Brief at 11. Mother downplays her violent outbursts and the consequent trauma Child has experienced as a result of repeated reunifications and placements. **Id.** at 11-15. Mother also minimizes the extent to which she is "stressed out" with Child's behavior during supervised visitation, though she admitted during testimony that she requires help even during these short periods. **See** Mother's Brief at 11-15; **see also,** N.T., 3/26/18, at 114-116.

Consistent with the foregoing, we discern no error in the trial court's finding that competent, clear and convincing evidence supported the termination of Mother's parental rights pursuant to Section 2511(a)(2), based upon Mother's continued incapacity – including her inability to complete domestic violence counseling and mental health treatment – that resulted in Child being without essential parental care, the cause of which "cannot or will not be remedied." **See Lilley**, 719 A.2d at 330; **Z.P.**, 994 A.2d at 1117.

Next, we consider whether Child's needs and welfare will be met by termination pursuant to Subsection (b). **See Z.P.**, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." **Id.** The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. **Id.** Ultimately, the concern is the needs and welfare of a child. **Id.**

We have stated:

> [b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child's needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

**Z.P.**, 994 A.2d at 1121 (quoting **In re C.S.**, 761 A.2d 1197, 1202 (Pa. Super. 2000)). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. **See In re N.A.M.**, 33 A.3d 95, 103 (Pa. Super. 2011). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. **Id.** "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." **In re B.,N.M.**, 856 A.2d 847, 856 (Pa. Super. 2004) (citations omitted).

Initially, we note that Mother has made no effort to argue that the trial court abused its discretion with regard to this section and the needs and welfare of Child. Accordingly, she risks waiver. **See In re Adoption of R.K.Y.**, 72 A.3d 669, 679 n.4 (Pa. Super. 2013) (declining to address subsection 2511(b) where the appellant did not make an argument concerning

that subsection). However, even in the absence of waiver, such claim would be unavailing.

The trial court opined:

After reviewing the testimony and considering the exhibits, this [c]ourt finds that the termination of Mother's rights will serve the best interests of the child. [Child] has spent all but ten months of her short life in foster care, and is well cared for and loved in her current foster home. The record shows that [Child] looks to her foster mother to fulfill her needs. Importantly, [Child] has had to endure significant trauma in being reunified with Mother, and then, only three (3) months later, being placed in custody, once again. [Child] is currently in treatment to deal with this trauma. In addition, Mother's domestic violence counselor expressed serious concerns over situations that would trigger Mother's frustration and annoyance, including when children cry and when Mother feels as though she is not being listened to. Given [Child's] age, this is extremely concerning. In addition, the counselor noted concerns about Mother's ability to identify safe and appropriate caretakers. This would have a significant impact on [Child's] safety. While Mother does have a positive relationship with [Child], expert testimony showed the termination of Mother's rights would benefit [Child], and provide [Child] with stability.

Trial Court Opinion, 12/10/18, at 12 (record citations omitted).

We discern no abuse of discretion in the trial court's conclusion that Child's needs and welfare are best served by termination. Accordingly, clear and convincing evidence supports the trial court's termination of Mother's parental rights under Section 2511(a)(2), as well as the Section 2511(b) findings that the severance of the bond between Mother and Child would not harm Child, and adoption would best serve Child's needs and welfare. *See* *Z.P.*, 994 A.2d at 1126-27; *K.Z.S.*, 946 A.2d at 763.

We next address Mother's final issue, in which she contends that the court erred in first scheduling a hearing on the petition to reinstate visitation with Child, and then denying the petition as moot. *See* Mother's Brief at 16. Mother argues, without citation to any legal authority, that the trial court "had an obligation to follow through with said hearing and decline to read counsel's report prior to the hearing." *Id.* Because Mother has not supported her argument with citation to any relevant legal authority, Mother has waived this issue. *See*, *e.g.*, *S.M.C. v. W.P.C.*, 44 A.3d 1181, 1189 (Pa. Super. 2012); *see also Umbelina v. Adams*, 34 A.3d 151, 161 (Pa. Super. 2011) (noting that where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived); *see also Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant."); *see also* Pa.R.A.P. 2119(a).

Regardless of waiver, this issue is without merit. Upon remand, this Court ordered that the trial court ascertain Child's legal preferences and that, if Child's preferred outcome was consistent with the result of the prior termination proceedings, the trial court should re-enter its March 26, 2018 decree. *See L.V.*, 198 A.3d 465, at *5. This Court did not direct or require visitation. Upon receipt of Attorney Scullin's report, the trial court was, indeed, advised of Child's clear legal preferences and, accordingly, re-entered

the termination decree. The trial court did not commit an error of law or abuse its discretion. **T.S.M.**, 71 A.3d at 267.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/09/2019