2018 PA Super 58

| MICHELLE M. SPEAKER, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PETER J. SPEAKER | : | No. 468 MDA 2017 |

Appeal from the Order Entered February 16, 2017
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 06-5433

BEFORE:   LAZARUS, J., DUBOW, J., and STRASSBURGER*, J.

OPINION BY DUBOW, J.:                     **FILED MARCH 16, 2018**

Appellant, Michelle M. Speaker ("Wife"), appeals from the February 16, 2017 Order entered in the Cumberland County Court of Common Pleas that granted the Petition to Terminate Order for Alimony filed by Appellee, Peter J. Speaker ("Husband"), effective January 1, 2020, and ordered a yearly decrease in alimony payments leading up to that date.  Upon careful review, we vacate the Order.

Husband and Wife were married on April 9, 1988, and divorced on December 11, 2008.  They are parents to four children.  Husband is an attorney who has worked at Thomas, Thomas & Hafer, LLP, since 1986, serving as a managing partner since 1995 and the chief managing partner since 2011.  Wife, whose highest educational degree is a high school diploma, was a homemaker after the birth of parties' first child in 1988.  Prior to that, Wife worked in a secretarial and administrative capacity.  Wife

_____
* Retired Senior Judge assigned to the Superior Court.

obtained her real estate license in 2005, one month prior to the parties' separation. At the time of the parties' separation in December 2005, all four children were minors and resided primarily with Wife; at the time of the divorce, the oldest child was attending college and living primarily with Father.

The parties entered into a Marital Settlement Agreement ("Agreement") on November 4, 2008, which was incorporated into the December 11, 2008 Divorce Decree. The Agreement relied, in part, on Husband's 2007 income, which was $286,165. Husband's Exhibit 6, Husband's Social Security Statement.

On December 11, 2008, the trial court issued an Alimony Order that ordered Husband to pay $4,500 per month in alimony to Wife. The Alimony Order also provided, pursuant to the Agreement:

> [Husband]'s alimony obligation will be modifiable based upon the terms and provisions as contained in the Divorce Code of the Commonwealth of Pennsylvania, 23 Pa.C.S. § 3101, *et. seq.,* but in any event, shall be reviewable on or after January 1, 2017.

Alimony Order, dated 12/11/08.

On September 14, 2016, Husband filed a Petition to Terminate Order for Alimony ("Petition") requesting a modification or termination of the alimony award based on "substantial changes in the economic circumstances of both parties." Petition to Terminate Order for Alimony, dated 9/14/16. On October 19, 2016, Wife filed an Answer to [Husband]'s Petition to

Terminate Order for Alimony and Counterclaim ("Counterclaim") requesting an upward modification in the alimony award.

On January 9, 2017, the trial court held a hearing on the Petition and Counterclaim. The trial court heard testimony from Husband, Husband's treating physician, Ian Roy Schreibman, M.D., and Wife.

Husband testified that he is 59 years old and currently employed as a chief managing partner at a law firm where he works 60 to 80 hours per week and earned approximately $450,000 in 2016. N.T. Alimony Hearing, 1/9/17, at 15, 16; Trial Court Opinion, filed 7/7/17, at 2. Husband explained that the partners in the firm elect the managing partners to a three-year term and once he turns 60 years of age, he will no longer be eligible to serve a new three-year term. *Id.* at 17-18. Husband testified that when he is no longer managing partner, his salary will decrease, there was "no formula" for his compensation, and his pay is dependent on "how hard you work, how many hours you put in, and how much money comes in because of your work." *Id.* at 18.

Husband further testified that he is a recovering alcoholic, and has been sober since October 10, 2003. *Id.* at 26. He also stated that his current medical conditions include hepatitis C, cardiac arrhythmia, acid reflux, and arthritis. *Id.* at 19-20. Husband clarified that he has had hepatitis C for 20 years, and in the past 3 years, has started to experience some symptoms, including fatigue, headaches, joint and muscle aches, and nausea. *Id.* at 21-22. Husband testified that in December 2016 he started

an eighty-day course of treatment for his hepatitis C with a medication called HARVONI, which he described as "kind of a wonder drug" that can cure hepatitis C. *Id.* at 23, 25.

Husband testified that his doctor recently advised him to cut back on his workload, and as a result, he would like to start working less and eventually retire at age 65. *Id.* at 25, 29-30. Husband acknowledged that his retirement account had a balance of $957,382. *Id.* at 35.

Husband's treating physician, Ian Roy Schreibman, M.D., who is a specialist in liver diseases and hepatitis C, testified via deposition. N.T. Deposition, 12/19/16, at 3. The deposition took place on December 19, 2016, prior to Husband beginning his course of treatment with HARVONI. Dr. Schreibman testified that he has been treating Husband for hepatitis C for the past three years and examines him on an annual basis. *Id.* at 13-14. Dr. Schreibman confirmed that Husband's symptoms include "debilitating fatigue, joint pains, muscle pains, intermittent episodes of nausea, increased lethargy." *Id.* at 6.

Dr. Schreibman testified that he prescribed HARVONI for Husband, but Husband's insurance company denied coverage twice. *Id.* at 7, 16. The insurance company denied the treatment because it lacked documentation regarding Husband's METAVIR scores and documentation that Husband had been abstinent from alcohol and illicit drugs for at least six months. *Id.* at 16. Dr. Schreibman testified that HARVONI has a cure rate of 93% and 80% of patients experience improvement in symptoms. *Id.* at 7, 16.

Given Husband's history of liver and heart disease, Dr. Schreibman recommended that Husband reduce his workload over the next few years. *Id.* at 12. Alternatively, if Husband completed the HARVONI treatment, became cured, had improvement in his symptoms, and a biopsy showed stability in his liver, Dr. Schreibman testified that continuing his current workload would be "reasonable." *Id.* at 18-19.

Wife is 55 years old and has been self-employed as a real estate agent since November 2005, a few weeks before Husband moved out of the house. N.T. Alimony Hearing, 1/9/17, at 63. Wife testified that her commissions in 2014, 2015, and 2016 were approximately $35,000, $31,000, and $34,000, respectively. *Id.* at 67-68. Wife considers her employment to be full-time and she is available to her clients "24/7." *Id.* at 66. Wife has worked seasonal jobs at various department stores to supplement her real estate income. *Id.* at 68-69. Wife also recently applied for two school district jobs, one as a substitute secretary and one in the cafeteria. *Id.* at 69, 93. She testified that she applied for the jobs because "I'm worried about how I'm going to pay my health insurance[.]" *Id.* at 93.

Wife received retirement funds through equitable distribution, which totaled approximately $100,459 in 2016. *Id.* at 70; Wife's Exhibits 19, 20, Wife's AXA Account Statements. Wife further testified that she has not been able to contribute to her retirement account. *Id.* at 71.

Wife resides in the marital home, which carries a mortgage balance of approximately $190,000. *Id.* at 59, 73. Wife testified that she has not been

able to make her monthly expenses with her income, alimony, and child support. *Id.* at 81. She explained, "I mean, I pay my bills. I do pay my bills. But I've had to at different times borrow money. I juggle things pretty well, I guess, except I have a lot of debt." *Id.* Wife does not have plans to retire and testified, "I don't know how I would retire ever." *Id.*

Wife testified that her health is "pretty good most of the time." *Id.* at 76. She has high blood pressure, high cholesterol, arthritis in her knees and fingers, and suspicion of lung disease. *Id.* 76-77. Wife also has hepatitis C, and underwent a year-long interferon treatment in early 2000. *Id.* at 76-77.

On February 11, 2017, the trial court issued an Order, which granted Husband's Petition, effective January 1, 2020, denied Wife's Counterclaim, and ordered Husband to pay alimony in the amount of $4,500 per month in 2017, $3,000 per month in 2018, and $1,500 per month in 2019.

Wife timely appealed. Both Wife and the trial court complied with Pa.R.A.P. 1925.

Wife raises the following issues on appeal:

1. Whether the trial court abused its discretion by failing to examine the parties' current financial and economic circumstances and instead, relied on evidence regarding Husband's desire to retire at an unknown date in the future, which was speculative and carried no probative value at trial.

2. Whether the trial court abused its discretion by arbitrarily decreasing Husband's alimony obligation in 2018 and again in 2019, by terminating Husband's alimony obligation prospectively effective January 1, 2020, and by denying Wife's request for an increase in the alimony order, when the clear and unambiguous language of the parties' Marital

- 6 -

Settlement Agreement provides for a "review" and not an automatic modification or termination of alimony.

3. Whether the trial court erred as a matter of law by failing to consider and set forth on the record all relevant alimony factors enumerated in Section 3701(b) of the Divorce Code prior to the deadline for the filing of an appeal, as the trial court's consideration of all seventeen factors is mandatory and should be available to the parties so that either party may pursue an appeal if they choose.

4. Assuming *arguendo* that the trial court properly considered all relevant factors pursuant to Section 3701(b) of the Divorce Code, the trial court abused its discretion by entering an Order in contravention of the competent evidence presented at trial regarding the economic circumstances of each party.

5. Whether the trial court abused its discretion by relying on U.S. Bureau of Labor Statistics to determine Wife's earning capacity without considering Wife's education, age, training, health, earnings history, and contribution as a homemaker and primary custodian of four (4) minor children for over 17 years during the marriage.

6. Whether the trial court abused its discretion by terminating Wife's alimony as a result of a personal bias against indefinite alimony despite the clear and unambiguous language of Section 3701(c) of the Divorce Code.

Wife's Brief at 4-5 (reordered for ease of disposition).

Our standard of review in spousal support cases is well settled: this Court must determine whether the trial court has abused its discretion. **Dudas v. Pietrzykowski**, 849 A.2d 582, 585 (Pa. Super. 2004). "Absent an abuse of discretion or insufficient evidence to sustain the support order, this Court will not interfere with the broad discretion afforded the trial court." **Dalrymple v. Kilishek**, 920 A.2d 1275, 1278 (Pa. Super. 2007) (citation omitted). An abuse of discretion is not merely an error of

judgment, but rather a determination that the trial court has "misapplied the law, or has exercised judgment which is manifestly unreasonable, or is the product of partiality, prejudice, bias or ill will as demonstrated by the evidence of record." **Dudas, supra** at 585 (citation and quotation omitted).

In her first issue, Wife avers that the trial court abused its discretion when it relied on evidence regarding Husband's desire to retire at an unknown date in the future rather than on evidence of the parties' current financial and economic circumstances. Wife's Brief at 32. Wife argues that Husband's desire to retire in the future does not constitute a substantial and continuing change in circumstances that would warrant a downward modification or termination of the alimony order and his request is, therefore, premature. Wife's Brief at 14-15. We agree.

Section 3701(e) of the Divorce Code permits modification and termination of an alimony award upon a showing of a substantial and continuing change of circumstances. 23 Pa.C.S. § 3701(e). It provides:

> An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

*Id.*

This Court has continually held that changed financial circumstances resulting from retirement can serve as a basis for a substantial and

- 8 -

continuing change necessary to modify an alimony award. In ***McFadden v. McFadden***, 563 A.2d 180 (Pa. Super. 1989), we held that the "changed financial circumstances of the appellant brought about by voluntary retirement" was a substantial and continuing change in circumstances sufficient to allow a modification of the alimony award. ***Id.*** at 183. In ***Lee v. Lee***, 507 A.2d 862 (Pa. Super. 1986), this Court found that the trial court erred when it refused to consider the changed financial circumstances of an appellant brought about by forced, early retirement. ***Id.*** at 865. In ***McKernan v. McKernan***, 135 A.3d 1116 (Pa. Super. 2016), we held that a change in a party's income based upon retirement benefits is a substantial change of circumstances upon which a modification of alimony may be based. ***Id.*** at 1118.

Here, the trial court found Husband's desire to retire and poor health to be a substantial and continuing change of circumstances and opined:

> Under Pennsylvania law, voluntary retirement may constitute a changed circumstance of a substantial and continuing nature that may warrant a modification of alimony. [Husband] is approaching retirement age, and is in poor health. Moreover, [Husband] testified that he does not wish to die at his desk like his father did. He indicated that he wishes to retire at the age of 65, which we found to be reasonable.

Trial Court Opinion, filed 7/7/17, at 3 (citation and footnote omitted).

However, in the instant case, Husband has not yet retired and has not set a definitive retirement date. Rather, Husband wishes to retire at the age of 65, in approximately 6 years. Because Husband has yet to retire or set an imminent date for retirement, he is unable to show any

changed financial circumstances to serve as a basis for a substantial and continuing change necessary to modify his alimony award downward. In fact, Husband's income has increased significantly since the entry of the original alimony order.

Likewise, Husband did not present any evidence to show that his "poor health" has affected his financial circumstances, his ability to work, or that it is of a "continuing" nature. As stated above, Husband's income has increased significantly since the entry of the original alimony order. Moreover, at the time of trial, Husband had just started an eighty-day treatment regimen for hepatitis C that has a 93% cure rate. While Dr. Schreibman recommended that Husband reduce his workload given his current symptoms, he also testified that it would be "reasonable" for Husband to continue working at his current rate if the treatment were successful.

Without an imminent retirement date, without results of Husband's treatment regimen, and absent any evidence of an unfavorable change in Husband's current financial circumstance, Husband's request for alimony modification is, at best, premature.

Our review of the record and application of relevant law indicates that Husband failed to produce evidence of a substantial and continuing change of circumstances necessary to modify his alimony award. We, therefore, conclude that the trial court abused its discretion in granting his Petition.

Insofar as Wife alleges the trial court abused its discretion by denying her Counterclaim, in which she requested an increase in alimony, she has failed to develop this issue beyond one phrase within one sentence. ***See*** Wife's Brief at 19. Accordingly, Wife waived this issue for failing to develop it in a meaningful fashion capable of review. ***See Commonwealth v. Walter***, 966 A.2d 560, 566 (Pa. 2009) (holding claims waived for failure to develop them). In light of our disposition, we decline to address Wife's remaining issues.

Order vacated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2018