J-A29002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM M. TAYLOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMIA TAYLOR | : | No. 743 MDA 2020 |

Appeal from the Decree Entered May 5, 2020
In the Court of Common Pleas of York County Civil Division at No(s):
2011-FC-002260-15

BEFORE: DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.: **FILED: JANUARY 4, 2021**

Appellant, William M. Taylor ("Husband"), appeals from the May 5, 2020 Divorce Decree which, *inter alia*, provided for the equitable distribution of the marital assets of Husband and Appellee, Samia Taylor ("Wife"), and ordered Husband to pay Wife $6,927 per month in alimony. After careful review, we affirm.

**PROCEDURAL AND FACTUAL HISTORY**

The parties are both familiar with the extensive procedural and factual history in this case, and we need not restate it in detail. Briefly, Husband and Wife married in 1993, which was a first marriage for both parties. Husband and Wife are parents to twin sons, who are currently in their early twenties.

---

[*] Retired Senior Judge assigned to the Superior Court.

After 23 years of marriage, Husband and Wife separated in 2016. On September 26, 2016, Husband filed a Complaint in Divorce.

Husband is 57 years old and is in poor health.[1] Husband has a Bachelor of Science degree and a Doctor of Medicine degree, is currently employed at York Laboratory Associates, Inc. as a part-owner and a Pathologist/Neuropathologist, and earns approximately $500,000 annually.

Wife is 54 years old[2] and is in good health. She has a Bachelor of Science degree and a Master of Business Administration degree and worked sporadically throughout the marriage, but is currently unemployed.[3] Husband and Wife agreed that Wife would stay home to be the primary caretaker for their twin sons, as well as the primary housekeeper of their home. Wife continues to devote a lot of time caring for their sons; one of the young men suffers from significant mental health issues.

During their marriage, Husband and Wife remained debt-free as they resided in a home worth approximately $670,000, took vacations to foreign countries including Syria, Lebanon, England, and Germany, and owned luxury

_____

[1] Husband was 55 years old at the time of the hearing before the Divorce Master. Husband endured a heart attack and triple bypass surgery when he was 49 years old, and suffers from ongoing pain and immobility related to his history of rheumatoid arthritis and multiple spinal fusions. Husband continues to work despite his physicians considering him to be disabled.

[2] Wife was 52 years old at the time of the hearing before the Divorce Master.

[3] The court assigned Wife a current earning capacity of $45,000 per year.

- 2 -

cars. Husband and Wife also purchased a condominium worth approximately $200,000 for their twin sons to live in while the young men attended college.

After a hearing, on March 21, 2019, the Master filed a Report and Recommendation that recommended, *inter alia*, awarding Husband approximately $1,600,000 and Wife approximately $1,700,000 of the marital assets, and denying Wife's request for alimony. Wife filed timely Exceptions to the Report, averring, *inter alia,* that the Master erred when she failed to award alimony to Wife. Husband filed a Brief opposing Wife's Exceptions.

On November 13, 2019, after oral argument, the trial court granted in part Wife's Exceptions and, *inter alia*, ordered Husband to pay Wife $8,444 in alimony per month, which was the same amount that Husband was currently paying Wife in spousal support. Husband filed a Motion for Reconsideration, which the trial court granted. On March 31, 2020, the trial court granted in part Wife's Exceptions and, *inter alia*, ordered Husband to pay Wife a reduced alimony amount of $6,927 per month. On May 5, 2020, the trial court entered a Divorce Decree.

Husband timely appealed. The trial court did not order Husband to file a Pa.R.A.P. 1925(b) Statement, and filed a Pa.R.A.P. 1925(a) Opinion relying on its March 31, 2020 Amended Opinion as the reasons for its decision.

## ISSUES RAISED ON APPEAL

Husband raises the following issues on appeal:

I.     Did the trial court err in calculating the alimony amount by incorrectly applying the Pennsylvania Support Guidelines

- 3 -

and failing to consider the factors as set forth in 23 Pa.C.S. § 3701(b)?

II.   Did the trial court err in ignoring Wife's reasonable needs in establishing an alimony amount?

III.   Did the trial court err in rejecting the divorce Master's findings with respect to credibility of witness, and specifically, [] that Husband was credible and wife's lack of credibility?

Husband's Br. at 4 (some capitalization omitted).

## LEGAL ANALYSIS

Our standard of review in alimony cases is well settled: we review alimony awards for an abuse of discretion. *Speaker v. Speaker*, 183 A.3d 411, 414 (Pa. Super. 2018). "Absent an abuse of discretion or insufficient evidence to sustain the support order, this Court will not interfere with the broad discretion afforded the trial court." *Id.* (citation omitted). An abuse of discretion is not merely an error of judgment, but rather a determination that the trial court has "misapplied the law, or has exercised judgment which is manifestly unreasonable, or the product of partiality, prejudice, bias or ill will as demonstrated by the evidence of record." *Dudas v. Pietrzykowski*, 849 A.2d 582, 585 (Pa. Super. 2004) (citation omitted).

It is within the trial court's discretion to weigh the evidence and determine witness credibility, and this Court will not reverse those determinations as long as the evidence in the record supports them. *Cook v. Cook*, 186 A.3d 1015, 1021–22 (Pa. Super. 2018). Finally, we note that a Master's report and recommendation is only advisory, but it should be "given

the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." ***Childress v. Bogosian***, 12 A.3d 448, 455–56 (Pa. Super. 2011) (citations omitted).

## Alimony Award

Husband's first two issues challenge the trial court's alimony award. Section 3701 of the Divorce Code provides, *inter alia*, that when a trial court determines "whether alimony is necessary" and "the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors," including the seventeen factors prescribed in 23 Pa.C.S. § 3701(b)(1)-(17). 23 Pa.C.S. § 3701(b). The purpose of alimony is not to reward or punish the parties, but rather "to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." ***Isralsky v. Isralsky***, 824 A.2d 1178, 1188 (Pa. Super. 2003) (citation omitted). "Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." ***Id.*** (citations and quotation marks omitted). "Following divorce, alimony provides a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution." ***Balicki v. Balicki***, 4 A.3d 654, 659 (Pa. Super. 2010).

## Alimony – Section 3701 Alimony Factors

In his first issue, Husband avers that the trial court abused its discretion when it ordered Husband to pay alimony to Wife in the amount of $6,927 per month. Husband's Br. at 15. Husband argues that the trial court "wholly disregarded" the Section 3701 factors and incorrectly based its alimony calculation solely on the application of the Pennsylvania Support Guidelines. *Id.* at 17. He further contends that the court failed to make a determination that alimony was necessary, and failed to apply the Section 3701 factors to the amount and duration of the alimony award. *Id*. at 18. Our review of the record belies these claims.

In this case, the trial court evaluated all of the Section 3701 alimony factors and placed significant importance on the large disparity in the parties' incomes and earning capacities, the ages of the parties, the duration of the marriage, the contribution of Wife to the increased earning power of Husband, the standard of living during marriage, and the contribution of Wife as homemaker. Trial Ct. Op., 3/31/20, at 8-15. The trial court opined:

> In summary, the [c]ourt finds that alimony is appropriate in this matter based upon the following: there has been a long marriage; a substantially greater income is earned by [] Husband; there is a likelihood that Wife's income will not improve; [] Wife was the primary housekeeper and child care provider and contributed significantly to Husband's increased earning power; and Wife will not be able to maintain the standard of living established during the marriage.

*Id*. at 14-15. After its evaluation of the Section 3701 alimony factors, the trial court made a finding that alimony was necessary, that the duration of

- 6 -

alimony should be permanent, and utilized the Pennsylvania Support Guidelines to determine the amount of that alimony:

> The [c]ourt finds that the awarding of said alimony is **necessary** and appropriate to achieve economic justice between Husband and Wife. The [c]ourt finds that, without an award of alimony, Wife would not be fairly and equitably compensated for her financial contributions to the marriage and not be able to meet her reasonable needs. Without her contributions to the household and parenting of the couple's two sons, Husband would not have been able to advance in his position in the medical field. Wife's contributions ultimately resulted in a significant sacrifice to her possible earning potential in the business and banking fields. As such, the [c]ourt rules that Husband will pay Wife **permanent** alimony effective in the month a final Divorce Decree is obtained, although it will be modifiable under 23 Pa.C.S. § 3701. . . . The [c]ourt calculates the order for alimony utilizing the support guidelines as modified in 2019.

*Id*. at 15 (emphasis added). Our review of the records supports the trial court's findings. Contrary to Husband's argument that the trial court "wholly disregarded" the Section 3701 alimony factors and relied solely on the Pennsylvania Support Guidelines in determining the alimony award, our review of the record reveals that the trial court analyzed and applied the Section 3701 alimony factors in conjunction with the Pennsylvania Support Guidelines. Moreover, Husband fails to cite any authority stating that it is improper for a trial court to consider the Pennsylvania Support Guidelines as part of its overall alimony analysis.

We acknowledge that Rule 1910.16-4 provides a detailed formula to calculate "spousal support and alimony *pendente lite* obligations" and the language of the Rule does not specifically mention a calculation of alimony.

Pa.R.C.P. No. 1910.16-4(a). However, Section 3701 provides the trial court great discretion in determining the amount and duration of alimony, stating, in relevant part, that "the court may allow alimony, as it deems reasonable," and "the court shall consider all relevant factors," including the seventeen alimony factors prescribed by the Rule. 23 Pa.C.S. § 3701(a), (b)(1)-(17). It is within the trial court's discretion to conclude that any factor, including the Pennsylvania Support Guidelines, is relevant to its evaluation of the amount and duration of its alimony award as long as it also engages in the mandatory analysis of the Section 3701 alimony factors. As the record supports the trial court's findings, we find no abuse of discretion.

**Alimony – Reasonable Needs**

In his second issue, Husband avers that the trial court abused its discretion when the court failed to consider Wife's reasonable needs when it established an alimony amount. Appellant's Br. at 20. Husband argues that Wife's own testimony and expense statement establishes that Wife needs less than $5,000 per month in alimony to maintain the lifestyle established during the marriage, and, therefore, the trial court should not have ordered an alimony award in excess of that. *Id*. at 26. We disagree.

Husband's argument that the trial court should have based the alimony amount solely on Wife's reasonable needs fails to recognize that both Section 3701 and case law instruct a trial court to consider a party's needs as one of many factors to be considered when determining the "nature, amount, duration and manner of payment of alimony." 23 Pa.C.S. § 3701(b). As

stated above, this includes the "payor's ability to pay." **Isralsky**, 824 A.2d at 1188 (citation and quotation marks omitted).

Instantly, the trial court placed great weight on the disparity in the parties' income, as well as Husband's ability to pay, when determining the amount of alimony to award. The trial court opined:

> [T]he Master failed to recognize the extremely large disparity in the parties' incomes, and placed insufficient weight on the likelihood that Wife would need to deplete those assets while Husband would retain his share while continuing to accumulate substantial wealth through his employment. The [c]ourt also finds that, while Wife is generally in good health and has approximately 14 years left to work before she would reach retirement age, the ability of a 53 or 54 year old with limited work history to obtain a well-paying employment with any possibility of significant career advancement is greatly reduced compared to someone ten or twenty years younger.

Trial Ct. Op. at 14. The record supports the trial court's findings.

Husband cites **Conner v. Conner**, 217 A.3d 301 (Pa. Super. 2019), to support his argument that the trial court failed to base its alimony award on Wife's reasonable needs. Appellant's Br. at 27. Husband argues that the ex-spouses in **Conner** were similarly situated in income, age, and length of marriage to Husband and Wife, and this Court reversed the alimony order and remanded for the recalculation of alimony when the trial court failed to perform a needs-based analysis on Wife's claim for alimony. **Id**. at 27-28 (citing **Conner, supra**.). However, Husband mischaracterizes the holding in **Conner**, which did not reverse the alimony award because the trial court failed to consider the wife's reasonable needs. Rather, this Court reversed because

the trial court included an asset already distributed in equitable distribution in its calculation of the husband's income and the wife's award of alimony. ***Conner***, 217 A.3d at 317-318. Accordingly, ***Conner*** is not instructive in the instant appeal.

After considering, *inter alia*, the equitable distribution award and the Section 3701 alimony factors, the court determined that alimony was necessary for Wife to meet her reasonable needs and awarded Wife $6,927 per month. Our review of the record supports the trial court's findings and we find no abuse of discretion.

**Divorce Master's Credibility Determinations**

In his final issue, Husband avers that the trial court abused its discretion when it rejected the Divorce Master's credibility determinations regarding Wife when the trial court awarded alimony. Appellant's Br. at 29. He argues that the court made a finding that the Master "demonstrated a bias against women who chose to put family before their careers" without any evidence in the record to support the finding. ***Id.*** at 32. This issue lacks merit.

In one of her Exceptions, Wife argued that the Divorce Master erred in making multiple findings that Wife was not credible. Exceptions, 4/10/19, at ¶ 13. In its Amended Opinion, the trial court granted Wife's Exception and made a finding that the Divorce Master demonstrated a bias against Wife. The trial court provided several examples from the record of why the court made such a finding. Trial Ct. Op. at 17-19. The trial court opined:

[T]he [c]ourt finds the Divorce Master demonstrated a clear bias against Wife throughout the Report and Recommendation, particularly with regard to Wife's employment history, which includes the parties' mutual decision for Wife to be a stay-at-home mother while the parties' children were young, as well as Wife taking the lead in assisting the parties' one son with regard to his mental health needs. The Master's Report includes numerous editorial and disparaging comments by the Master which show a personal bias towards and disdain for Wife having the option of making the decision on various occasions to prioritize her parenting duties and responsibilities. For example, on page 20 of the Report and Recommendations, Wife is quoted explaining why she switched from full time to part time at one job. Wife said that it was because she had to "take the children to daycare at 7 a.m., work a full day and then go pick them up[,"] to which the Master parenthetically replies[,] "what all working parents, married or single **do** . . . ." Aside from simply being a false statement, as all working parents, married or single, do not have to pay for a daycare provider when they have family or friends willing and able to serve in that role free of charge, the comment is an example of unnecessary and inappropriate editorializing by the Master.

*Id*. at 17-18 (emphasis in original). The trial court highlights several additional instances where the Master engages in "unnecessary and inappropriate editorializing" including:

On page 21 of the Report and Recommendation, when discussing why Wife left a different full time job, the Master states that Wife "once again quit because she was again going back and forth to Pittsburgh to 'take care of her son[.]'" . . . . When evaluating factor 9 . . . the Master stated that Wife has the necessary education to find appropriate employment "if she will only do so and keep it rather than find yet another excuse to quit yet another short term job." In the Master's analysis of factor 15, she again demonstrated a clear bias against Wife when she stated that Wife is capable of self-support "if only she will . . . get and keep a job rather that to continue to go down the incessant road of excuses as to why she has not done so or cannot do so." These are only a few examples of the Master's inappropriate commentary woven through the Report.

*Id*. at 18-19 (internal citations omitted). After citing several examples of the Master's bias towards Wife, the trial court concluded, "[t]he Master's clear personal bias against Wife negates the standard deference typically given to a Master's credibility determinations by the [c]ourt." *Id*. at 19.

As stated above, it is indisputably within the trial court's discretion to weigh the evidence and determine witness credibility. While a trial court should give a Master's report and recommendation, "the fullest consideration" on credibility determinations, the report and recommendation is only "advisory." *Childress*, 12 A.3d at 455-56. Husband fails to cite any authority that states the trial court does not have the discretion to review the Master's credibility determinations when reviewing an exception grounded in an allegation of bias. As the record supports the trial court's findings, Husband is not entitled to relief on this issue.

## CONCLUSION

In conclusion, we find that the trial court did not abuse its discretion when it ordered Husband to pay Wife $6,927 per month in alimony.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/04/2021

- 12 -